Cheshire
No. 83-141

SUPERVISORY UNION 29

v.

NEW HAMPSHIRE DEPARTMENT OF EDUCATION & a.

July 2, 1984

118

120

*Goodnow, Arwe, Ayer, Prigge & Wrigley*, of Keene (*Jayne F. Lynch* on the brief and orally), for the plaintiff.

*Gregory H. Smith*, attorney general (*Ronald F. Rodgers*, assistant attorney general, on the brief and orally), for the State.

BROCK, J.   In 1978, Supervisory Union 29 (now School Administrative Unit 29) brought a petition for declaratory judgment against the New Hampshire Department of Education and the New Hampshire Retirement System. At issue was the question who is obligated to make employer contributions to the State retirement system on behalf of John W. Day, who served as superintendent of Supervisory Union 29 from 1961 until his retirement on June 30, 1974.

S.U. 29 sought an adjudication, pursuant to RSA 491:22, that:

> "a. the State of New Hampshire is the employer of the Superintendent of Schools of School Administrative Unit 29 and has been the employer since July 1, 1967;
>
> b. the State of New Hampshire is liable for the full amount of the 'normal contribution' and 'accrued liability contribution' retirement contributions due from the Superintendent's employer pursuant to RSA 100-A:16, II(c)."

A hearing was held in the Superior Court (*Contas*, J.), and on March 11, 1983, the court ruled that "at all times relevant to the determination of the issues in this case, the State of New Hampshire was Mr. Day's employer." However, the court further ruled that S.U. 29 was Mr. Day's employer for retirement purposes and that both the State and S.U. 29 were liable for the appropriate employer contributions to the extent of each entity's contributions to Mr. Day's salary. In effect, the court ruled that S.U. 29 was liable for eighty percent and the State was liable for twenty percent of the retirement contributions. S.U. 29 appealed to this court. For the reasons which follow, we affirm in part and reverse in part.

■   In view of the signed contract between Mr. Day and the State Board of Education, and the statutory law as it existed throughout Mr. Day's tenure as superintendent of S.U. 29, the superior court

correctly determined that the State was Mr. Day's employer. *See* RSA 186:11, XXII (State board has power to hire and fire superintendent) (amended by Laws 1975, 505:6, codified at RSA 186:11, XXII (Supp. 1983), State board shall authorize the employment of superintendent and has power to remove); RSA 186:8 (State board shall prescribe qualifications and duties of superintendent); RSA 189:43 (supervisory union shall nominate superintendent) (amended by Laws 1979, 458:1, codified at RSA 189:43 (Supp. 1983), supervisory union shall nominate and shall have authority to remove, with such removal subject to review and approval of commissioner of education upon request of superintendent).

The plaintiff, S.U. 29, argues that it necessarily follows from this determination that the State is liable for all of the employer contributions to the retirement system on behalf of Mr. Day. S.U. 29 further argues that the superior court's reliance on the legislative history of RSA 189:47 and on RSA 100-A:16, III(b), to support its conclusion that the State was liable only for twenty percent of the employer contributions, was in error.

■ Although the trial court ruled that Mr. Day was an employee of the State, it also concluded that Mr. Day was an employee of the supervisory union for retirement purposes. The court referred to the legislative history of a 1979 amendment to RSA 189:47, relating to supervisory union budgets. This amendment added the following language to the statute: "Superintendents . . . shall be deemed employees of the union in so far as payment of salaries and contributions to the employees retirement system of the state of New Hampshire and workmen's compensation are concerned." Laws 1979, 458:2 (codified at RSA 189:47 (Supp. 1983)). Thus, as of August 24, 1979, the effective date of the amendment, this statute *expressly* designates superintendents as employees of the supervisory unions for purposes of retirement contributions.

The court below pointed to a statement contained in the legislative history of Senate bill 148, which became chapter 458 of the Laws of 1979:

> "The bill will clarify the *existing employment status of* supervisory unions, *superintendents*, assistant superintendents, business administrators and teacher consultants *as employees of the supervisory unions*. The current law does not specify who the employer of such personnel is, that of the New Hampshire Department of Education or the Supervisory Union in which they work. It has caused problems with the responsibility in workmen's compensation claims.

> Under this bill the Supervisory Union would be responsible for insurance and retirement benefits of such designated personnel.
>
> The Department of Education asked for the introduction of this bill and the situation needs clarification for new contracts."

N.H.H.R. JOUR. 678 (1979) (emphasis added). Based upon this statement in the legislative history, the trial court agreed with the State's contention that the 1979 amendment to RSA 189:47 simply clarified pre-existing law; *i.e.*, that S.U. 29 had been Mr. Day's employer for retirement purposes.

The legislative history of the 1979 amendment to RSA 189:47 includes not only the statement regarding the clarification of existing employment status, but also an indication of the long-standing dispute over the responsibility for employer retirement contributions between supervisory unions and the department of education. *See* N.H.S. JOUR. 616–17 (1979) (statement of Senator Sanborn for the committee on education). We note that this bill was introduced at the request of the New Hampshire Department of Education, one of the defendants in the present suit, after the initiation of the present action. *See* N.H.H.R. JOUR. 678 (1979). We are concerned that what the trial judge relied upon as a *legislative* expression of pre-existing law may have been nothing more than an assertion made by an interested party promoting *its* own interpretation of pre-existing law. However, without more, we cannot state that this legislative history to RSA 189:47 is not entitled to some consideration.

█ Comments concerning prior law which are contained in the legislative history of a subsequent amendment enacted by a subsequent legislature, although not controlling, are entitled to some consideration. *See* 2A J. SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 49.11 (C. Sands 4th ed. 1973). "Where the original law was subject to very serious doubt, by permitting subsequent amendments to control the former meaning a great deal of uncertainty in the law is removed. And the legislature is probably in the best position to ascertain the most desirable construction." *Id.* at 265.

█ S.U. 29 contends that the legislature intended the 1979 amendment to RSA 189:47 to have prospective application only. It points to the statement in the legislative history that "the situation needs clarification for new contracts." N.H.H.R. JOUR. 678 (1979). It also points to the fact that the legislature did not indicate in the

amendment itself that the amendment would have retroactive application, or that it clarified existing as well as new contracts. We reject this argument. The legislative history of the 1979 amendment to RSA 189:47 supports the conclusion that, by this amendment, the legislature intended to clarify or interpret an ambiguity in the existing law and not to effect a change in legal rights. *Cf. Blue Mountain Forest Ass'n v. Town of Croydon*, 119 N.H. 202, 205, 400 A.2d 55, 57 (1979) (where a former statute is clarified by amendment, the amendment is strong evidence of the legislative intent concerning the original enactment).

Moreover, the fact that the legislature had not interfered in the practice of requiring the supervisory union to share in the expense of employer contributions on behalf of Mr. Day is some evidence that this practice conformed to the original legislative intent. *See State v. Decato*, 120 N.H. 358, 360, 415 A.2d 327, 328 (1980). According to the stipulation of facts filed by the parties, S.U. 29 contributed approximately eighty percent of Mr. Day's salary. From 1967 to June 30, 1973, "normal contributions" due by the employer on behalf of John Day were made by S.U. 29 with partial contribution by the State retirement system. From July 1, 1973, until his retirement, the "normal contributions" were made by the defendant department of education, with reimbursement by S.U. 29. All "accrued liability contributions," since the first billing in 1972, have been paid by S.U. 29.

■ In the case before us, the 1979 amendment to RSA 189:47, even if not in fact a clarification of pre-existing law, indicates, at the least, implicit legislative approval of the then-existing *practice* of requiring supervisory unions to bear some of the burden of employer contributions to the retirement system. *See* Analysis of Senate Bill No. 148 (1979) ("[t]his bill clarifies the existing practice of designating superintendents . . . as employees of the supervisory union for purposes of retirement benefits under the New Hampshire retirement system . . ."). We therefore affirm the superior court's determination that S.U. 29 was Mr. Day's employer for purposes of contributions to his retirement benefits.

To support its determination that S.U. 29 and the State should be liable for the employer contributions to the retirement system in proportion to their contributions to Mr. Day's salary, the superior court relied on RSA 100-A:16, III(b). The court concluded that RSA 100-A:16, III(b) provides for a different employer contribution scheme when two parties contribute to the payment of an employee's salary. RSA 100-A:16, III(b) states:

"A county, city, town, school district or other political subdivision of the state having any employee members who are paid directly by the state but for whom the state is later reimbursed for the part of their compensation not chargeable to state funds shall likewise reimburse the state for that part of the contribution made by the state to this system which is based on such part of compensation not chargeable to state funds."

S.U. 29 contends that this provision is inapplicable to the present case because the term "employee" as used in this provision refers only to employees of local entities, such as a county, city, etc. . . . and not to employees of the State.

We agree with S.U. 29 that this provision refers to employees of local entities and merely provides that a local entity, that reimburses the State for the part of its (the local entity's) employee's compensation for which the local entity is responsible, shall also be liable for that portion of the employer contribution to the retirement system which is based upon the local entity's contribution to the employee's compensation. It logically follows that the State would remain liable for that portion of the employer contribution to the retirement system which is based on the part of the local employee's compensation which is chargeable to State funds.

The plaintiff contends that this provision does not support a determination that the legislature intended a local entity to be responsible for the contribution to the retirement system on behalf of a *State* employee to the extent of the local entity's contribution to that person's salary. The applicability of RSA 100-A:16, III(b) obviously depends upon the superior court's initial determination that the legislature had intended, even prior to the express designation in the 1979 amendment to RSA 189:47, that superintendents be considered employees of a local entity (the supervisory union) insofar as payment of salaries and contributions to the retirement system are concerned. We have affirmed that determination and therefore conclude that the superior court's application of RSA 100-A:16, III(b), was correct.

While he was superintendent of Supervisory Union 29, Mr. Day was paid by the State through the office of the State treasurer, with the supervisory union contributing approximately eighty percent of his total salary. By application of RSA 100-A:16, III(b), therefore, S.U. 29 is liable for "that part of the contribution" to the retirement system which is based on this eighty percent of the total compensation which is "not chargeable to state funds."

■ The plaintiff further argues that even if RSA 100-A:16, III(b) controls, it applies only to the "normal contributions" and not to the "accrued liability contributions." We assume as true the plaintiff's statement that this accrued liability fund was established in order to pay for the increased benefits which became effective with the creation of the New Hampshire Retirement System as of July 1, 1967. RSA 100-A:16, III(b) provides for reimbursement to the State "for *that part of the contribution* made by the state to this system *which is based on such part of compensation* not chargeable to state funds." (Emphasis added.) Although an employer's contribution consists of a "normal contribution" and an "accrued liability contribution," it appears that it is only the "normal contribution" which is based on an employee's compensation. *See* RSA 100-A:16, II(b), (c), (d), (e) (Supp. 1983). Therefore, S.U. 29 argues that, because RSA 100-A:16, III(b), contains no reimbursement language with respect to "accrued liability contributions," this provision does not support distributing such liability in proportion to contributions to salary. We agree, and conclude that the superior court erred in ruling that the parties are liable for the "accrued liability contribution" portion of Mr. Day's pension benefits to the extent of their actual percentage contributions to his salary.

However, we do not agree with S.U. 29's further argument that the State is, therefore, liable for the entire amount of the "accrued liability" contribution. To accept the plaintiff's argument, we would have to infer, from the absence in RSA 100-A:16, III(b) of any language regarding an employer's "accrued liability contribution," that the legislature thereby intended that the State pay this amount on behalf of an employee of a local entity. Rather, it is more logical to conclude that the reason RSA 100-A:16, III(b) does not address reimbursement to the State with respect to the "accrued liability contribution" is because there is no need to do so.

■ As employer, the local entity is the obligor, on behalf of its employees, with respect to employer contributions to the retirement system. As distinguished from the contribution which the State has made to the retirement system based on the State's contribution to Mr. Day's salary (*i.e.* the "normal contribution"), there is no need to require local entities to "reimburse" the State for a contribution which the State has not made. It follows from our conclusion that the legislature intended that superintendents be deemed employees of supervisory unions for purposes of retirement benefits, that S.U. 29, as employer, is therefore liable for the employer's "accrued liability contribution" on behalf of Mr. Day. This interpretation also accords with the past practice of charging S.U. 29 for the "accrued

liability contribution," which contribution S.U. 29 has paid, and which practice, as previously noted, received implicit legislative approval.

We have considered other arguments raised by S.U. 29 and found them without merit.

We affirm the lower court's judgment (1) that the State of New Hampshire was Mr. Day's employer, and (2) that the parties are liable for the "normal contribution" portion of Mr. Day's pension benefits in proportion to their contributions to his salary. We reverse the court's judgment to the extent that it found the State liable for any of the "accrued liability contribution" due on behalf of Mr. Day.

*Affirmed in part; reversed in part.*

All concurred.