Strafford
No. 2000-284

### THE STATE OF NEW HAMPSHIRE

v.

### THEODORE WARREN

Argued: November 14, 2001
Opinion Issued: April 15, 2002

*Philip T. McLaughlin*, attorney general (*N. William Delker*, senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Theodore Warren, was convicted after a jury trial in Superior Court (*Mohl*, J.) of reckless manslaughter, *see* RSA 630:2, I(b) (1996), for the stabbing death of Kevin Connolly. He appeals, arguing that the trial court should have instructed the jury that he was entitled to use deadly force in self-defense if he reasonably believed Connolly was likely to use unlawful force in the commission of a felony. *See* RSA 627:4, II(d) (1996). We affirm.

The defendant, his wife and their daughter lived in an apartment with the defendant's sister-in-law and her two children. Connolly, a friend of the

Warrens, also stayed in the apartment. On November 20, 1996, an argument at the apartment that began between the defendant and his wife culminated in a physical confrontation between the defendant and Connolly. The defendant stabbed Connolly in the heart. Connolly died from the stab wound.

At trial, the defendant requested the following jury instruction, based upon RSA 627:4, II(d):

> A person is justified in using deadly force to protect himself from another person using unlawful force to commit a felony against him in his dwelling even if the other person also resides in the dwelling.

> Thus, a roommate may use deadly force against another roommate when he reasonably believes that person is about to use unlawful force against him during the commission of a felony against him in their dwelling.

The State objected, arguing that RSA 627:4, II(d) does not justify a person's use of deadly force against a cohabitant. The trial court rejected the proposed instruction. The sole question on appeal is whether RSA 627:4, II(d) allows a defendant to use deadly force against a cohabitant of the defendant's home when the defendant reasonably believes that the cohabitant is likely to use unlawful force in the commission of a felony against the defendant in the dwelling or its curtilage.

"The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *State v. Vincent*, 139 N.H. 45, 48 (1994) (quotation omitted). We will reverse the trial court's decision if the jury instructions did not "fairly cover the issues of law in the case." *State v. Dedrick*, 135 N.H. 502, 505 (1992).

The defendant argues that the jury instructions did not fairly cover the issues of law in this case because the court declined to give his requested instruction. The question of whether the defendant was entitled to the instruction raises an issue of statutory construction. "When construing the meaning of a statute, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used." *State v. Cobb*, 143 N.H. 638, 643 (1999) (quotation omitted). We do not presume that the legislature would pass an act leading to an absurd result, however, *see State v. Kay*, 115 N.H. 696, 698 (1975), and we will consider other indicia of legislative intent where the literal reading of a statutory term would compel an absurd result. *See* 2A N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.07, at 194-97 (6th ed. 2000).

RSA 627:4, II provides in pertinent part that "[a] person is justified in using deadly force upon another person when he reasonably believes that such other person ... (d) [i]s likely to use any unlawful force in the commission of a felony against the actor within such actor's dwelling or its curtilage." The defendant argues that this statute's reference to "another person" is unambiguous and that the statute applies whether the assailant is an intruder or a cohabitant. We agree with the State, however, that such a reading would lead to absurd results.

Under the defendant's interpretation of the statute, he was entitled to a jury instruction that he was justified in using deadly force against his roommate even if he believed only that his roommate was about to use non-deadly force against him. This interpretation of the statute alters the well-established common law principle that a person is generally justified in using deadly force only to meet the use of unlawful deadly force or an imminent threat to life or basic bodily integrity simply because the felony against the person occurs not on the street, but in a dwelling in which the parties have an identical interest. *See* 1 W. LAFAVE & A. SCOTT, SUBSTANTIVE CRIMINAL LAW § 5.7, at 652 (1986); Green, *Castles and Carjackers: Proportionality and the Use of Deadly Force in Defense of Dwellings and Vehicles*, 1999 U. ILL. L. REV. 1, 7. Because we believe that this would be inconsistent with the general principle that the law places great weight upon the "sanctity of human life in determining the reasonable necessity of killing a human being," *State v. Grierson*, 96 N.H. 36, 40 (1949) (quotation and ellipses omitted), we agree with the State that such a result would be absurd. We therefore turn to the statute's legislative history to determine legislative intent. *See* SINGER, *supra* § 46.07, at 194-97.

As we have noted, under the common law rule of self-defense, a person is generally justified in using deadly force upon another only if such force is necessary to protect himself (or another) from the use of unlawful deadly force or an imminent threat to life or basic bodily integrity. *See* Green, *supra* at 7. Implicit in this rule are the notions: (1) that deadly force should be used only when, and to the extent, "necessary"; and (2) that the force used in response to the threat should not be excessive in relation to the harm threatened. *Id.* at 7-8. In 1971, the New Hampshire legislature codified the basic rules governing the use of deadly force in self-defense as follows:

> II. A person is justified in using deadly force upon another person when he reasonably believes that such other person:
>
> > (a) Is about to use unlawful, deadly force against the actor or a third person, or

(b) Is likely to use any unlawful force against a person present while committing or attempting to commit a burglary, or

(c) Is committing or about to commit kidnapping or a forcible sex offense.

RSA 627:4, II (Supp. 1971). Although the statute permitted a person to use deadly force against an assailant who used unlawful force against the person while committing or attempting to commit a burglary, the statute did not allow the use of deadly force simply to prevent the unlawful entry into a dwelling.

■ We conclude from our review of the legislative history that the bill that eventually became RSA 627:4, II(d) is essentially a defense of premises statute intended to permit a person to use deadly force whenever the person reasonably believes that a person who has unlawfully entered the dwelling intends to use unlawful force against the person in order to commit a felony against the person in the dwelling, regardless of whether the person reasonably believes the intruder is about to use unlawful *deadly* force. In our view, this "defense of dwelling" exception to the general rule that the force used in response to a threat should be proportionate is based upon the defender's interest in the premises and the assailant's status as an intruder. Because "[i]mplicit in the defense of dwelling defense is the notion that the dwelling is being defended against an intruder," *State v. Hare*, 575 N.W.2d 828, 832 (Minn. 1998), the exception does not apply where the assailant is a cohabitant. *Id.*

We disagree with the defendant that RSA 627:4, II(d) must apply to both cohabitants and intruders because self-defense against an intruder is already covered by RSA 627:4, II(b) (1996). According to the defendant, because burglary requires unlawful entry into a home, RSA 627:4, II(b) was intended to provide a homeowner with the ability to use deadly force in self-defense against an intruder. Therefore, reading RSA 627:4, II(d) as the State does renders RSA 627:4, II(b) superfluous. We are unpersuaded by the defendant's argument because we conclude that paragraph II(d) applies to a broader set of factual situations than does paragraph II(b).

The defendant also asserts that because the legislature has abolished the distinction between intruders and cohabitants with the enactment of RSA 627:4, III(a) (1996), a consistent reading of the statute demands that such a distinction not be read into paragraph II(d). We disagree. RSA 627:4, III provides, in pertinent part:

A person is not justified in using deadly force on another to defend himself or a third person from deadly force by the other if he knows that he and the third person can, with complete safety:

    (a) Retreat from the encounter, except that he is not required to retreat if he is within his dwelling or its curtilage and was not the initial aggressor . . . .

RSA 627:4, III thus codifies the "duty to retreat" doctrine, and makes clear that a person confronted with deadly force is not justified in using deadly force in response if he or she can retreat with complete safety, unless he or she is in his or her dwelling or its curtilage and is not the initial aggressor. The exception to the duty to retreat is premised upon the notion that when a person is in his or her own home or its curtilage, there is no safer place to which to retreat. LAFAVE, *supra* § 5.7, at 660-61 n. 68 (1986). Given the rationale for this exception, we agree with the defendant that it applies even when the assailant is a cohabitant of the dwelling. Such a reading does not, however, mandate that RSA 627:4, II(d) also applies when the assailant is a cohabitant.

It is not inconsistent to hold: (1) that a person is not entitled to use *deadly* force to repel a *non-deadly* attack in the person's home where the assailant is a cohabitant, *see* RSA 627:4, II(d); and also (2) that a person may, rather than retreat, use *deadly* force to repel a *deadly* attack in the person's home where the assailant is a cohabitant. *See* RSA 627:4, III(a). Such a reading of the statute obviates any concern that reading RSA 627:4, II(d) to apply only to intruders and not cohabitants would undermine a battered spouse's ability to defend himself or herself. Under this reading of paragraphs II(d) and III(a), a victim of domestic violence would not be justified in using deadly force if he or she did not reasonably believe that the aggressor was about to use deadly force. However, a victim of domestic violence would be justified in using deadly force if he or she reasonably believed that the other person was about to use deadly force, *see* RSA 627:4, II(a), even if he or she could retreat from the encounter with complete safety, so long as the victim is within the victim's dwelling or its curtilage and was not the initial aggressor. *See* RSA 627:4, III(a).

The defendant argues that two aspects of the statute's legislative history support his interpretation of the statute. First, the defendant asserts that the Comments to the 1969 REPORT OF THE COMMISSION TO RECOMMEND CODIFICATION OF CRIMINAL LAWS make clear that there should be no distinction made between cohabitants and intruders. Even if these comments related to the issue of defense of dwelling, however, they were written in 1969, and do little to illuminate the meaning of RSA 627:4, II(d), which was enacted in 1981.

The defendant also argues that subsequent legislative history supports his reading of the statute. In particular, he notes that in 1993, the Attorney General's Office proposed legislation that would have expressly excluded cohabitants from the reach of RSA 627:4, II(d). The defendant asserts that the legislature's failure to adopt the proposed amendment kept intact the principle that there is no distinction between intruders and cohabitants in the application of RSA 627:4, II(d). We agree with the defendant that "[c]omments concerning prior law which are contained in the legislative history of a subsequent amendment enacted by a subsequent legislature ... [may be] entitled to some consideration." *Supervisory Union 29 v. N.H. Dep't of Ed.*, 125 N.H. 117, 122 (1984). However, the legislative history of a proposed amendment rejected by a subsequent legislature does not alter our interpretation of the statute, particularly since the proposed amendment purported to clarify, not change, existing law.

In summary, we hold that RSA 627:4, II(d) does not justify the use of deadly force against an assailant when the assailant is a cohabitant of the home. Thus, we conclude that the defendant was not entitled to the jury instruction he requested.

*Affirmed.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; NADEAU and DALIANIS, JJ., concurred.