890 So.2d 386 (2004)
RIVER PLACE CONDOMINIUM ASSOCIATION AT ELLENTON, INC., Appellant,
v.
Irving J. BENZING, Jr., and Anita B. Benzing, Appellees.
No. 2D04-1489.
District Court of Appeal of Florida, Second District.
December 22, 2004.
*387 Philip E. Perrey of Hamrick, Perrey, Quinlan & Smith, P.A., Bradenton, for Appellant.
John R. Blue and Henry G. Gyden of Carlton Fields, P.A., St. Petersburg, for Appellees.
STRINGER, Judge.
River Place Condominium Association at Ellenton, Inc. ("River Place"), seeks review of the final summary judgment determining that Irving J. Benzing, Jr., and Anita B. Benzing ("the Benzings") are the proper owners of lands formerly submerged beneath the Manatee River and subsequently exposed by dredge and fill activities ("the filled lands"). River Place argues that it is the proper owner under section 253.12(9), Florida Statutes (2003), because it is the record owner of the property immediately upland of the filled lands. In the alternative, River Place argues that section 253.12(9) is unconstitutional because it violates article X, section 11 of the Florida Constitution. The Benzings argue that they are the proper owners under section 253.12(9) because they are the record title holders of the filled lands. We conclude that the trial court correctly determined that the Benzings are the record title holders of the filled lands and therefore the proper owners under section 253.12(9). We also conclude that section 253.12(9) is constitutional.
In 1951, the legislature vested title to all lands submerged beneath tidal waters in the State Board of Trustees. Ch. 26776, Laws of Fla. (1951). The filled lands were submerged beneath the waters of the Manatee River at this time and became sovereign lands. On July 1, 1993, the legislature enacted section 253.12(9), which divested the State of its ownership of lands filled before July 1, 1975, as follows:
All of the state's right, title, and interest to all tidally influenced land or tidally influenced islands bordering or being on sovereignty land, which have been permanently extended, filled, added to existing lands, or created before July 1, 1975, by fill, and might be owned by the state, is hereby granted to the landowner having record or other title to all or a portion thereof or to the lands immediately upland thereof and its successors *388 in interest.... This subsection shall not grant or vest title to any filled, formerly submerged state-owned lands in any person who, as of January 1, 1993, is the record titleholder of the filled or adjacent upland property and who filled or caused to be filled the state-owned lands.
Section 253.12(9) transfers title on July 1, 1993, from the State to either "the landowner having record or other title" to the filled lands or to the landowner who owns the lands immediately upland from the filled lands. We interpret this statute to give priority to the landowner with record or other title because that option is listed first in the statute.
The lands in this case were filled before July 1, 1975. The chain of title establishes that NA Development had recorded a quit claim deed to the filled lands prior to July 1, 1993, the effective date of section 253.12(9). NA Development subsequently executed a quit claim deed transferring the filled lands to Alaskan Ventures, Inc.,[1] who thereafter executed a quit claim deed transferring the filled lands to the Benzings. The Benzings argue that title to the filled lands vested with NA Development upon the enactment of section 253.12(9).
River Place acknowledges the existence of the recorded deeds, but argues that those deeds did not legally convey record title to the filled lands because the State never conveyed the sovereign lands into private ownership. Thus, River Place argues that NA Development was not a "landowner having record or other title" under section 253.12(9) and that title to the filled lands vested with the record upland owner upon the enactment of section 253.12(9).[2]
It is undisputed that NA Development's recorded quit claim deed did not establish it as the true legal owner of the filled lands prior to the enactment of section 253.12(9) on July 1, 1993. The issue before this court is whether NA Development's quit claim deed became effective with the enactment of section 253.12(9). Whether all wild deeds became effective by virtue of this statute is not an issue we need to decide today because it is clear from the record that the deed to NA Development was prepared and filed in good faith. It was not an attempt simply to steal land from the State.
Section 253.12(9) divests the State of its ownership of lands filled before July 1, 1975, and vests ownership in "landowner[s] having record or other title." The effect of section 253.12(9) was to vest legal title on July 1, 1993, in parties who had only a colorable claim to filled lands by virtue of existing, but defective "record or other" titles. Section 253.12(9) would be meaningless if it was limited to parties who were properly deeded the filled lands from the State because ownership would already be vested in those parties. Additionally, the statute exempts record title owners "who filled or caused to be filled the state-owned lands." This exemption would be illogical if the statute was limited to parties who were deeded filled lands from the State because the State would be prohibiting title to vest in those in whom title had already vested.
The clear purpose of section 253.12(9) is to remove clouds on the title to lands filled *389 before July 1, 1975. Thus "landowner[s] having record or other title" cannot be limited to those parties who do not have a cloud over their title to lands filled before July 1, 1975. In this case, NA Development's quit claim deed became effective with the enactment of section 253.12(9). As NA Development's successor in interest, the Benzings therefore are the proper owners of the filled lands under section 253.12(9).
River Place's alternative argument is that section 253.12(9) is unconstitutional because it violates article X, section 11 of the Florida Constitution. Article X, section 11 provides that the State owns title to lands under navigable waters and that it holds these lands "in trust for all the people." "Sale of such lands may be authorized by law, but only when in the public interest." Id. River Place argues that section 253.12(9) gives land away without compensation and that this statute violates the requirement for a "sale" in the constitution.
Section 253.12(9) was enacted because the lands involved were of marginal value to the State and would be more valuable if placed on the tax rolls. In most cases, the legal costs associated with a sale of these lands would have exceeded the value of the lands. We construe the constitution to allow a "sale" in which the State does not receive immediate monetary compensation. In this regard, we are expressly declaring a statute valid and construing the Florida constitution to do so. See Fla. R.App. P. 9.030(a)(2)(A)(i), (ii).
Affirmed.
ALTENBERND, C.J., and SALCINES, JJ., concur.
NOTES
[1] River Place argues that the quit claim deed from NA Development Corporation to Alaskan Ventures is defective. We conclude that River Place lacked standing to raise this issue on behalf of NA Development Corporation.
[2] River Place also argues that a certificate issued by the Department of Environmental Protection to River Place conveyed title to the filled lands to River Place. We reject this argument without discussion.