PER CURIAM.
L.A.M.A. Land Management, L.C. appeals from an order finding that appellees Jose L. Ferro and Martha Lopez hold title pursuant to section 253.12(9), Florida Statutes (2006), and adverse possession. We reverse because Ferro failed to prove that they returned the property to the appraiser within one year after they entered into possession and that section 253.12(9) is inapplicable.
At issue is a portion of land and its improvements located in the City of Marathon, Monroe County, Florida. Ferro owns a 60' by 100' lot, Lot 22, Block 2, located in the Coco Plum Beach Subdivision. Ferro obtained title to Lot 22 in 2002. Ferro’s predecessor in title obtained the property from parts of Driftwood Estates and bay bottom lands conveyed to them by the Trustees of the Internal Improvement Fund.
L.A.M.A. owns two upland lots, Lots 2 and 3, also located in Driftwood Estates. *700 Additionally, it owns 2.9 acres of bay bottom located directly south of the two upland lots and adjacent to Ferro’s Lot 22. In 1999, L.A.M.A. obtained title to the bay bottom property. L.A.M.A.’s predecessors, R.J. Paul and Christine Paul, obtained their property rights from the Trustees of the Internal Improvement Fund based upon a 1951 recorded deed. At the time during which the Pauls obtained title to the bay bottom property, the Coco Plum Beach property was submerged. In 1958, the developers of Coco Plum Subdivision filled a number of lots, including Ferro’s Lot 22. During the filling process, the same developer inadvertently filled portions of L.A.M.A.’s 2.9 acres of bay bottom property.
In 1983, Ferro’s predecessor built a seawall, fence, and dock over L.A.M.A.’s filled bay bottom property, which was afterward placed in the county tax roll beginning in 1984. In 2002, Ferro extended the seawall, erected davits, and built other structures in the same land and has paid taxes on these improvements.
The trial court ruled in Ferro’s favor, finding that he held title pursuant to section 253.12(9), Florida Statutes (2006), and pursuant to adverse possession. We do not agree, however, that Ferro is the record title holder.
As a preliminary matter, section 253.12(1), Florida Statutes (2006), vested title to submerged sovereignty tidal and bottom lands in the Trustees of the Internal Improvement Trust Fund, except for any land already conveyed by deed or statute. The Trustees of the Internal Improvement Trust Fund could sell and convey such islands and submerged lands if determined by the board to be in the public interest, upon such prices, terms, and conditions as it sees fit. See § 253.12(2)(a), Fla. Stat. (2006).
Section 253.12(9) reads as follows:
All of the state’s right, title, and interest to all tidally influenced land or tidally influenced islands bordering or being on sovereignty land, which have been permanently extended, filled, added to existing lands, or created before July 1, 1975, by fill, and might be owned by the state, is hereby granted to the landowner having record or other title to all or a portion thereof or to the lands immediately upland thereof and its successors in interest....
The effect of section 253.12(9) was to vest legal title on July 1, 1993, in parties who had only a colorable claim to filled lands by virtue of existing, but defective “record or other” titles. See River Place Condo. Ass’n at Ellenton, Inc. v. Benzing, 890 So.2d 386, 388 (Fla. 2nd DCA 2004). Section 253.12(9) applies only to parties who have colorable claims, or where the land might be owned by the state. Furthermore, were there to be a cloud on the title, section 253.12(9), gives priority to the landowner with record or other title, rather than the upland owner. Id. at 388 (stating that because that option is listed first in the statute, the record title holder has priority).
Ferro argues that section 253.12(9) vests legal title upon them as the upland owner. This argument, however, is based upon a misapplication of section 253.12(9). Section 253.12(9) is inapplicable in this case because title vested in the Pauls when they acquired the land from the Trustees of the Internal Improvement Trust Fund. We thus find that Ferro does not hold title pursuant to section 253.12(9).
L.A.M.A. contends that Ferro did not present clear and convincing evidence to establish adverse possession without color of title. We agree.
Section 95.18, Florida Statutes (2006), governs the ownership of property through adverse possession. Section 95.18(1) states:
*701 When the occupant or those under whom the occupant claims have been in actual continued occupation of real property for seven years under a claim of title exclusive of any other right, but not founded on a written instrument, judgment, or decree, the property actually occupied shall be held adversely if the person claiming adverse possession made a return of the property by proper legal description to the property appraiser of the county where it is located within one year after entering into possession and has subsequently paid all taxes and matured installments of special improvements liens levied against the property by state, and municipality.
The language of section 95.18(1) makes it unequivocally clear that an adverse possession claim fails in the absence of a return of the property within one year of entering into possession. See Pasekoff v. Kaufman, 392 So.2d 971, 974 (Fla. 3d DCA 1981) (where this Court determined that the trial court correctly dismissed the adverse possessor’s claim because the adverse possessor failed to show a return of property for taxes, in accordance-with section 95.18(1), Florida Statutes (1975)). Here, there is no evidence of the return of the property. Furthermore, Lopez testified that she did not file a return with the county appraiser between January 21, 2002, and a period of one year thereafter. Ferro’s attempt at adverse possession thus fails.
Consequently, we conclude that section 253.12(9) does not vest title in Ferro and that Ferro failed to prove adverse possession without color of title. Accordingly, we reverse the trial court’s order in favor of Ferro and Lopez.
Reversed.