EMAS, J.
Francisco and Sonia Pages (“Dr. and Mrs. Pages”) appeal two lower court orders: (1) an order denying their exceptions to, and adopting, the general magistrate’s Report and Recommendation; and (2) a final order dismissing their amended complaint with prejudice and entering final judgment in favor of Julio Rafael Seliman-Tapia (“Tapia”). For the reasons that follow, we affirm.
On December 27, 2009, Dr. and Mrs. Pages were in the parking lot of the Dolphin Mall when they were confronted by Tapia, who accused Dr. Pages of parking too close to his car, causing it to become inoperable.[1] According to witnesses who testified at an evidentiary hearing, Dr. Pages became very agitated, and was acting in an aggressive and confrontational manner toward Tapia, who had his hands in his pockets and was backing away from Dr. Pages. Dr. Pages continued to be confrontational and was bumping into Ta- *538 pia with his chest. Mrs. Pages got between her husband and Tapia. At some point, Dr. Pages turned toward Tapia’s wife, Ms. Singer, who was telling Dr. Pages to calm down. Dr. Pages then rushed toward Ms. Singer in an aggressive manner. At this point Tapia became worried about his wife, who was disabled, and Tapia rushed toward Dr. Pages and pushed him down, causing Dr. Pages to hit his head. Mrs. Pages testified that Tapia picked Dr. Pages up and threw him in the air, causing him to land on his head. She also testified that in doing so, Tapia made contact with Mrs. Pages, and that her back hurt for a few days afterward. Mrs. Pages was the only witness who testified that Tapia came into contact with her when Tapia pushed Dr. Pages down.
Tapia was later charged by information with felony battery on Dr. Pages and misdemeanor battery on Mrs. Pages. Pursuant to a negotiated plea, Tapia pled guilty to the misdemeanor battery, was adjudicated guilty, and the State entered a nolle prosequi to the felony battery charge.
The Pages filed a civil lawsuit against Tapia, and in the complaint asserted two counts — assault and battery against Dr. Pages and loss of consortium on Mrs. Pages’ behalf. The complaint was later amended to include an additional count of assault and battery upon Mrs. Pages.
Tapia asserted entitlement to immunity based on Florida’s Stand Your Ground laws.[2] The issue of immunity was referred to a general magistrate, who conducted an evidentiary hearing on June 14, 2012.[3] The general magistrate found that Tapia had established his entitlement to immunity under section 776.032, Florida Statutes (2009), applying a preponderance of the evidence standard. See State v. Yaqubie, 51 So.3d 474 (Fla. 3d DCA 2010). Specifically, the magistrate found that Mrs. Pages was not credible, and that the testimony of all the other witnesses established that Dr. Pages was the aggressor, and that Tapia acted only when Dr. Pages began moving aggressively toward Tapia’s wife.[4] Dr. and Mrs. Pages filed exceptions to the general magistrate’s Report and Recommendation and, after a hearing, the trial court denied the exceptions and adopted the general magistrate’s Report and Recommendation. The court later entered final judgment in favor of Tapia, and dismissed the amended complaint with prejudice.
On appeal, we apply a mixed standard of review: “The trial court’s legal conclusion[s are] reviewed de novo, but its findings of fact are presumed correct and can be reversed only if not supported by competent substantial evidence.” Darling v. State, 81 So.3d 574, 577 (Fla. 3d DCA 2012).
Chapter 776, Florida Statutes, encompasses what is referred to as Florida’s “Stand Your Ground” law. Under section 776.032(1):
A person who uses force as permitted in s.776.012, s.776.013, or s.776.031 is justified in using such force and is immune from criminal prosecution and civil ac *539 tion for the use of such force, unless the person against whom force was used is a law enforcement officer....
Section 776.012 (“Use of force in defense of person”) provides in pertinent part:
A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other’s imminent use of unlawful force.
Section 776.013, titled “Home protection; use of deadly force; presumption of fear of death or great bodily harm,” provides, inter alia:
A person who is not engaged in an unlawful activity and who is attacked in any other place[5] where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another....
§ 776.018(3).
Dr. and Mrs. Pages assert that Tapia was not entitled to immunity because, under section 776.013(3), he was “engaged in unlawful activity” when he pushed Dr. Pages. As evidence that Tapia was “engaged in unlawful activity,” Dr. and Mrs. Pages point to Tapia’s plea of guilty to the misdemeanor battery charge on Mrs. Pages. In other words, Dr. and Mrs. Pages argue, Tapia’s guilty plea and adjudication of guilt for a battery upon Mrs. Pages established, as a matter of law, that Tapia was “engaged in unlawful activity” when he pushed Dr. Pages, barring Tapia from seeking immunity under section 776.032.
Even if we were to find that the guilty plea to misdemeanor battery upon Mrs. Pages established as a matter of law that Tapia was “engaged in criminal activity” under section 776.013, it is beside the point: Tapia was entitled to, and did, assert immunity not only under section 776.013, but under section 776.012 as well. Under section 776.012, Tapia would be justified in using non-deadly force against Dr. Pages if he reasonably believed such force was necessary to defend himself or Ms. Singer (Tapia’s disabled wife) against Dr. Pages’ imminent use of unlawful force.
It is true that under section 776.013(3), a person may “meet force with force, including deadly force” (emphasis supplied), which on its face appears to contemplate the use of both deadly and non-deadly force. We also acknowledge that the person seeking immunity under section 776.013(3) must establish that he was “not engaged in unlawful activity.” However, this “not engaged in unlawful activity” language is not present in the applicable portion of section 776.012, which unambiguously provides for the justified use of non-deadly force. Section 776.032, by its express language, provides immunity for a person “who uses force as permitted in sections 776.012, 776.013 or 776.031.” This language evidences a clear legislative intent to provide alternative bases for asserting immunity under the Stand Your Ground Law.[6]
Therefore, even if Tapia was determined to have been “engaged in unlawful activi *540 ty” (the misdemeanor battery upon Mrs. Pages) at the time of his use of force upon Dr. Pages, it is of no moment because the force used by Tapia upon Dr. Pages was non-deadly force and, under the relevant portion of section 776.012, Tapia need not establish that he was not engaged in unlawful activity.
Following an evidentiary hearing, the magistrate issued a detailed fourteen-page report and recommendation with factual findings, credibility assessments, and a conclusion that Tapia established by a preponderance of that evidence that he “had a reasonable fear for the safety of his wife, Ms. Singer, given Dr. Pages’ immediate and continuing aggressive behavior and, based on this reasonable fear, [Tapia] rushed over and pushed Dr. Pages hard to keep him from coming closer to his wife, Ms. Singer.”[7] Thus, because a determination was made that Tapia reasonably believed he had to act to defend against Pages’ imminent use of “unlawful force” upon Tapia’s wife, Tapia was justified in the use of non-deadly force under section 776.012, rendering unnecessary any further discussion of the alternative provisions or requirements of section 776.013(3).
We conclude that there is competent substantial evidence to support the magis *541 trate’s findings, and the trial court properly adopted the Report and Recommendation and dismissed the claims against Tapia. See In re Drummond, 69 So.3d 1054, 1056 (Fla. 2d DCA 2011) (holding “a trial court must accept the magistrate’s findings of fact if they are supported by competent, substantial evidence.”)
Affirmed.

. Tapia’s car was equipped with a disabling device which renders the vehicle unable to start if it is struck or moved.

. Section 776.032(1), Florida Statutes (2009) provides immunity "from criminal prosecution and civil action.”

. A total of eight witnesses testified at the hearing before the general magistrate, including Tapia, his wife Ms. Singer, his cousin Francisco Ramirez, Dr. and Mrs. Pages, two mall security guards who witnessed the incident, the tow truck driver who was at the scene to tow Tapia’s car, and a retired police officer who was leaving the mall and witnessed the incident.

.Even Dr. Pages admitted he was screaming and waving his arms at Tapia and that he bumped Tapia with his chest.

. The reference to "any other place” distinguishes this provision from the preceding subsections of section 776.013, which address the use of force in a dwelling, residence, or occupied vehicle. See §§ 776.013(l)-(2), Fla. Stat. (2009).

. Appellant’s argument would require us to conclude that the Legislature, in enacting section 776.013(3), abolished the long-recognized and near-universal common-law concept that there is no duty to retreat when using non-deadly force in defense of self or *540 others. See Weiand v. State, 732 So.2d 1044, 1049 n. 4 (Fla.1999) (observing there is no duty to retreat when using non-deadly force in self-defense); Redondo v. State, 380 So.2d 1107, 1110 n. 1 (Fla. 3d DCA 1980), quashed in part on other grounds, 403 So.2d 954 (Fla.1981) (recognizing there is "no duty to retreat when the defender uses non-deadly force to defend himself against an unlawful assault. ‘It seems everywhere agreed that one who can safely retreat need not do so before using non-deadly force.’ W. LaFave & A. Scott, Jr., Criminal Law 395 (1972). 'If he does not resort to a deadly force, one who is assailed may hold his ground whether the attack upon him be of a deadly or some lesser character. Although it might be argued that a safe retreat should be taken if thereby the use of any force could be avoided, yet ... the logic of this position never has been accepted when moderate force is used in self-defense.’ State v. Abbott, 36 N.J. 63, 174 A.2d 881, 885 (1961). Indeed all the duty to retreat cases in Florida have involved homicides in which deadly force was employed by the person asserting self defense. 16 Fla. Jur. Homicide's 60 (1957)’’).
There is nothing in the language of the Stand Your Ground Law, or its legislative history, evidencing an intent to effectuate such a change. See Fla. S. Comm, on CJ, CS for SB 436 (2005). To the contrary, the Stand Your Ground Law expanded the circumstances in which one using deadly force has no duty to retreat and may stand his or her ground (hence the name of the law) and meet force with force. The creation of a duty to retreat before using non-deadly force in defense of self or others would require express legislative language. See Thomber v. City of Ft. Walton Beach, 568 So.2d 914, 918 (Fla. 1990) (recognizing that "[t]he presumption is that no change in the common law is intended unless the statute is explicit and clear in that regard. Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law”)(internal citations omitted).

. The magistrate determined that Tapia's guilty plea to (and adjudication of guilt for) misdemeanor battery did not, as a matter of law, bar Tapia from contending that he was not "engaged in unlawful activity.” The magistrate further determined, as a finding of fact, that Tapia was not engaged in unlawful activity and that the credible testimony established that Tapia had no physical contact with Mrs. Pages.
Although the magistrate concentrated on the immunity provisions of section 776.013, Tapia had raised entitlement to immunity under sections 776.013 and 776.012. Because there was competent substantial evidence to support a finding of immunity under section 776.012, we need not address whether, under section 776.013, Tapia's guilty plea and adjudication conclusively established, for immunity purposes, that he was engaged in unlawful activity.