# Third District Court of Appeal

## State of Florida

Opinion filed November 28, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-962
Lower Tribunal No. 14-498-P

_____

**Sean P. Colgan, as Trustee Under Agreement of Trust of Sean Colgan Dated January 25, 2008,**
Appellant,

vs.

**Shadow Point, LLC,**
Appellee.

An Appeal from the Circuit Court for Monroe County, Luis M. Garcia, Judge.

Annesser & Chaiken, PLLC, and John W. Annesser and Fernando J. Valle, for appellant.

Hershoff, Lupino & Yagel, LLP, and Russell A. Yagel and Brittany N. Miller, for appellee.

Before ROTHENBERG, C.J., and SUAREZ and SCALES, JJ.

ROTHENBERG, C.J.

Sean P. Colgan, as Trustee Under Agreement of Trust of Sean Colgan Dated January 25, 2008 ("Colgan"), appeals from the trial court's entry of a final judgment, which granted Shadow Point, LLC ("Shadow Point") injunctive and declaratory relief and granted Colgan injunctive relief regarding the parties' disputed riparian rights. For the reasons that follow, we reverse the final judgment insofar as it awarded Shadow Point declaratory and injunctive relief and remand for the entry of a final judgment in favor of Colgan.

## BACKGROUND

Colgan currently owns waterfront property adjacent to Shadow Point's waterfront property alongside the shore of Largo Sound. These two properties were at one point under common ownership, but that larger parcel of land was subdivided and transferred over time to different parties. The two properties now share a boundary line constituting the southern boundary of Colgan's property and the northern boundary of Shadow Point's property. The properties meet to form a roughly ninety degree angle at the southern and eastern borders of Colgan's property and the northern border of Shadow Point's property. There is a concrete dock, which is built over a bulkhead, that extends east from the vertex of this angle. There is also a boathouse on Colgan's property near where the concrete dock begins. The parties dispute ownership over the concrete dock and the uplands underneath it ("the disputed property").

2

The dispute in this case began when Colgan constructed a boundary fence extending along its property's southern border and on top of the concrete dock. Shadow Point objected to the placement of this fence and filed suit on the grounds that the fence was constructed on Shadow Point's property and interfered with Shadow Point's riparian rights. In response, Colgan claimed that the boundary fence was necessary to protect its property and its ability to ingress and egress from its boathouse because Shadow Point's tenants have trespassed and moored boats to the concrete dock, blocking Colgan's access to its boathouse.

Shadow Point filed suit and, in its amended complaint, pled counts to quiet title and for ejectment, injunctive relief, and declaratory relief. The claims to quiet title and for ejectment sought a declaration and adjudication that Shadow Point owns the disputed property in fee simple and is entitled to exclusive possession. The claims for injunctive and declaratory relief sought to protect Shadow Point's riparian rights that were allegedly interfered with when Colgan constructed the boundary fence. Colgan filed its answer and a counterclaim for injunctive relief, alleging that Shadow Point's continued use of the concrete dock violated Colgan's riparian rights.

During a bench trial, after Shadow Point's case-in-chief, Colgan moved for a directed verdict against all of Shadow Point's claims on the ground that Shadow Point failed to prove that it owned the disputed property. The trial court granted

3

Colgan's motion for a directed verdict as to Shadow Point's quiet title and ejectment claims, and the trial court expressly found, while rebuffing Colgan's attempt to introduce testimony that it owned the disputed property, that "[the court has] already determined that [Shadow Point] has not proven their [sic] ownership." However, the trial court nevertheless denied Colgan's motion for a directed verdict as to Shadow Point's injunctive and declaratory relief claims.

After the bench trial, the trial court entered a final judgment and concluded, among other things, that: (1) there was insufficient evidence to determine that there is one owner of the concrete dock "to the exclusion of all others"; (2) "the disputed property is filled land, and Shadow Point has riparian rights inuring from the disputed property"; (3) Colgan's boundary fence interferes with Shadow Point's riparian rights and must therefore be removed; and (4) Shadow Point's mooring of vessels at the concrete dock interferes with Colgan's riparian rights, and thus, neither Shadow Point nor Colgan may moor vessels there. Only Colgan has appealed.

## ANALYSIS

Although a trial court's order granting an injunction is typically reviewed for an abuse of discretion, "the standard of review is de novo if a legal principle is involved." Telemundo Media, LLC v. Mintz, 194 So. 3d 434, 435 (Fla. 3d DCA 2016). Similarly, "[a]lthough this court has recognized that our review of a

4

declaratory judgment is limited and the trial court's decision is accorded a presumption of correctness, a declaratory judgment may be overturned on appeal if it is based on a misapplication of law or shown by the record to be clearly wrong." Yorty v. Realty Inv. & Mortg. Corp., 938 So. 2d 1, 4 (Fla. 3d DCA 2006); see also Pages v. Seliman-Tapia, 134 So. 3d 536, 538 (Fla. 3d DCA 2014) (stating that the trial court's legal conclusions are reviewed de novo and the trial court's factual findings are reviewed for competent substantial evidence).

Central to the final judgment is the trial court's finding that the disputed property is filled land, and thus, Shadow Point has riparian rights inuring from the disputed property. However, the mere fact that land has been filled is insufficient, as a matter of law, to establish entitlement to riparian rights. The Legislature has defined riparian rights as follows:

> Riparian rights are those incident to land bordering upon navigable waters. They are rights of ingress, egress, boating, bathing, and fishing and such others as may be or have been defined by law. Such rights are not of a proprietary nature. They are rights inuring to the owner of the riparian land but are not owned by him or her. They are appurtenant to and are inseparable from the riparian land. **The land to which the owner holds title must extend to the ordinary high watermark of the navigable water in order that riparian rights may attach.** Conveyance of title to or lease of the riparian land entitles the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland.

§ 253.141(1), Fla. Stat. (2012) (emphasis added); Teat v. City of Apalachicola, 738 So. 2d 413, 414 (Fla. 1st DCA 1999) (stating that "an individual must own

5

property down to the ordinary high water mark in order to possess riparian rights"). Therefore, there must be some theory in the record that supports a finding that Shadow Point had an ownership interest in uplands that "extend to the ordinary high watermark of the navigable water" in order to justify the trial court's determination that Shadow Point possessed riparian rights in the area of the disputed property. We have found no such record support. In fact, the trial court entered a directed verdict on Shadow Point's claim to quiet title and expressly stated that Shadow Point failed to prove that it owns the disputed property. Shadow Point has not appealed these determinations and has therefore waived any argument challenging them.

The record supports the trial court's determination that Shadow Point failed to prove that it owned the disputed property. First, Shadow Point's property description in its warranty deed suggests that, traveling east along Shadow Point's northern property line, Shadow Point's property does not touch the waterway until after the disputed property. Second, Shadow Point never introduced evidence that its property, adjacent to the disputed property, was riparian. In fact, Shadow Point's own expert surveyor testified that he did not know whether Shadow Point's northern property line was riparian because he never conducted a high watermark survey. Third, Colgan's expert surveyor actually performed a high watermark survey and testified that the ordinary high watermark lies to the north of Shadow

Point's northern property line near the dock. Thus, because Shadow Point failed to demonstrate ownership over the disputed property, the trial court erred by finding that Shadow Point has riparian rights inuring from the disputed property.

On appeal, Shadow Point has claimed that its riparian rights inure from its ownership interest in the disputed property pursuant to section 253.12(9), Florida Statutes (2012), a statute which grants the state's interests and title in submerged lands that were permanently filled before July 1, 1975 to landowners who have record title to immediately upland property or to a portion of the filled land. See River Place Condo. Ass'n at Ellenton, Inc. v. Benzing, 890 So. 2d 386, 388-89 (Fla. 3d DCA 2004) ("The clear purpose of section 253.12(9) is to remove clouds on the title to lands filled before July 1, 1975."). Shadow Point had the opportunity to prove ownership under section 253.12(9) to the trial court. However, the trial court expressly stated that Shadow Point failed to prove that it owned the disputed property and entered a directed verdict against Shadow Point on its claims to quiet title and for ejectment, and in fact, the record reflects that Shadow Point failed to establish that when it acquired the property, the relevant section of the northern boundary of its property (abutting the dock) touched water at all.

Timing is important to Shadow Point's claim for riparian rights. Shadow Point might have been able to establish riparian rights inuring from the section of its property abutting the dock if it had established that: (1) fill was placed on top

7

of the waterway abutting its property in that location, and (2) the placement of fill occurred after its property and Colgan's property were subdivided. If the fill was placed at that location by the prior owner of the combined properties, as Shadow Point seems to contend, then the fact that the disputed property was filled land would be irrelevant to Shadow Point's ownership. The fact that the land was filled would only be relevant to the prior owner's claim to the disputed property. However, Shadow Point failed to establish that the area in question was filled after the prior owner of the combined Shadow Point property and Colgan property subdivided its property and conveyed the Shadow Point property to Shadow Point's predecessor in interest. In fact, the record seems to suggest otherwise.

Although it is unclear as to exactly when the prior owner added fill or even whether that fill was placed on land or water, the record suggests that the prior owner of the combined properties built the dock and added fill to the property in 1959 or 1960. The record, however, suggests that at the time the prior owner subdivided the combined property and conveyed what is now the Shadow Point property to Shadow Point's predecessor in interest, the Shadow Point property did not meet the shoreline at that location. Instead, the Shadow Point property at that location abutted the concrete dock and filled land that constitute the disputed property.

In order to establish its riparian rights in the area around the disputed property, Shadow Point was required to demonstrate that its property bordered (was touched by) navigable water post-subdivision. Because Shadow Point did not establish ownership interest in the dock and filled land beneath the dock; the filled land and dock separate Shadow Point's property from the water; and no navigable water abuts Shadow Point's property at that location, Shadow Point failed to prove that it is an upland landowner entitled to riparian rights.

## CONCLUSION

The trial court has expressly found that Shadow Point failed to prove that it has any ownership rights in the disputed property. Therefore, the trial court erred by determining that Shadow Point had riparian rights inuring from the same disputed property and by awarding injunctive relief to protect those rights. Accordingly, we reverse the final judgment insofar as it granted Shadow Point declaratory and injunctive relief and remand for the entry of a final judgment in favor of Colgan. Because Shadow Point has not cross-appealed the trial court's grant of injunctive relief in Colgan's favor, we affirm that portion of the final judgment without further discussion.

Reversed in part; affirmed in part.

**ANY POST-OPINION MOTION MUST BE FILED WITHIN SEVEN DAYS. A RESPONSE TO THE POST-OPINION MOTION MAY BE FILED WITHIN FIVE DAYS THEREAFTER.**