NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
Case No. 2022-0432
Citation: State v. Shea, 2024 N.H. 1

THE STATE OF NEW HAMPSHIRE

v.

JOSHUA D. SHEA

Argued: June 22, 2023
Opinion Issued: January 19, 2024

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Audriana Mekula, assistant attorney general, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

HANTZ MARCONI, J.

[¶ 1] Following a jury trial in Superior Court (Schulman, J.), the defendant, Joshua D. Shea, was convicted of criminal threatening with a deadly weapon.  See RSA 631:4, II(a)(2) (2016).  On appeal, the defendant

argues, inter alia, that the trial court erred when instructing the jury regarding the statutory defense related to the display of a firearm. See RSA 631:4, IV (2016). We reverse and remand.

[¶ 2] The jury heard the following evidence. On May 30, 2021, the complainant was driving a truck on Route 28 in Epsom. He testified that a car, driven by the defendant, pulled out in front of him, causing him to slam on the brakes and hit his horn. The complainant and the defendant thereafter "exchanged middle fingers." The complainant pulled into a gas station at the Epsom traffic circle. The defendant drove around the circle and pulled in behind the complainant.

[¶ 3] The testimony of the complainant and the defendant differed as to what happened thereafter. For purposes of deciding this appeal, the defendant's version of the events in question is relevant. The defendant testified that the complainant walked towards him, "aggressively swearing and saying he was going to . . . rip [the defendant] out of [his] car." He further testified that the complainant said he would "beat [the defendant's] ass," and asked the defendant to pull into the parking lot next door where there were no cameras.

[¶ 4] As the complainant approached him, the defendant was "in fear" of a confrontation. He "warned" the complainant that he had a firearm by unclipping the holster containing the firearm from his belt and rolling it up to his chest while informing the complainant that he had it. The complainant testified that the defendant pointed the gun at him; the defendant denied doing so.

[¶ 5] The defendant was indicted for criminal threatening, in relevant part, for placing or attempting to place the complainant in fear of imminent bodily injury by pointing a firearm at him. RSA 631:4, IV provides the following defense to a charge of criminal threatening:

> A person who responds to a threat which would be considered by a reasonable person as likely to cause serious bodily injury or death to the person or to another by displaying a firearm or other means of self-defense with the intent to warn away the person making the threat shall not have committed a criminal act under this section.

See also RSA 627:4, II-a (2016) (stating that "[a] person who responds to a threat which would be considered by a reasonable person as likely to cause serious bodily injury or death to the person or to another by displaying a firearm or other means of self-defense with the intent to warn away the person making the threat shall not have committed a criminal act"); RSA 627:9, IV (2016) (stating that the "act of producing or displaying a weapon shall constitute non-deadly force").

[¶ 6] Regarding this defense, the trial court instructed the jury that the display of the firearm must be made in response to a threat, and that "the threat must be of such a nature that a reasonable person acting under the same circumstances as the Defendant would have believed that the person or persons making the threat were likely to cause death or serious bodily injury to the Defendant or a third-party." The court further explained:

> In determining whether a reasonable person acting under the same circumstances would have believed that a threat of likely death or serious bodily injury was present, you must consider all of the circumstances [known] to the Defendant. . . .
>
> . . . .
>
> You should consider these circumstances as they were presented to the Defendant at the time, and not necessarily as they appear upon detached reflection. One factor that you may consider in determining whether the threat existed is whether the Defendant could have completely and safely left the area without any risk to himself or others.

(Emphasis added.) The defendant contends, inter alia, that the emphasized instruction erroneously imposed upon the defendant a duty to retreat not imposed by the statute. Resolving this issue requires us to construe RSA 631:4, IV.

[¶ 7] The interpretation of a statute is a question of law, which we review de novo. State v. Folds, 172 N.H. 513, 521 (2019). We construe the Criminal Code according to the fair import of its terms and to promote justice. RSA 625:3 (2016). Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme. Folds, 172 N.H. at 521. When interpreting a statute, we look first to the language of the statute itself, and, if possible, construe the language according to its plain and ordinary meaning. Id. We do not read words or phrases in isolation, but in the context of the entire statutory scheme. Id.

[¶ 8] The defendant argues that determining whether a reasonable person would consider a threat as likely to cause serious bodily injury or death such that the threatened person may display a firearm to warn away the person making the threat does not include consideration of the threatened person's ability to retreat. We agree.

[¶ 9] RSA 631:4, IV addresses an action that a person may take in response to a threat that a reasonable person would consider as likely to cause serious bodily injury or death — that is, in essence, a threat of deadly force. See RSA 627:9, II (2016) (defining "deadly force" as, inter alia, any assault or

3

confinement committed with the purpose of causing "death or serious bodily injury"). The statute recognizes that the threatened person may respond by displaying a firearm to warn away the person making the threat — that is, it describes the use of a type of non-deadly force as a response. See RSA 627:9, IV (stating that the act of "displaying a weapon shall constitute non-deadly force").

[¶ 10] The legislature has also specifically addressed the response of retreating from an encounter. Prior to 2011, RSA 627:4, III codified the "duty to retreat" doctrine, providing that a person is not justified in using deadly force to defend himself from the use of deadly force by another when the person could, with complete safety, retreat from the encounter, unless he is in his dwelling or its curtilage and is not the initial aggressor. State v. Warren, 147 N.H. 567, 571 (2002). In 2011, the statute was amended to provide that the duty to retreat before using deadly force does not apply when the person is anywhere he has a right to be, and was not the initial aggressor. RSA 627:4, III(a) (2016). Significantly, however, while the legislature has chosen to recognize said duties to retreat before the defensive use of deadly force, no such duty has been identified by the legislature upon the defensive use of non-deadly force. See RSA 627:4, I (2016).

[¶ 11] Two points become clear upon reflection. First, when the legislature intends that a person be required to retreat as the person's first response, it knows how to make that requirement clear. Thus, if the legislature had intended that a person be required to respond to a threat likely to cause serious bodily injury or death by retreating before being justified in responding with the non-deadly force of displaying a firearm to warn away the threatening person, it would have said so. Cf. Appeal of Roland, 170 N.H. 467, 470 (2017) (if legislature wanted to establish a mandatory timeframe, it knew how to do so); State v. Mayo, 167 N.H. 443, 452 (2015) (stating that the expression of one thing in a statute implies the exclusion of another, especially when a thing is provided in one part of the statute and omitted in another).[1]

---

[1] By limiting the duty to retreat to the defensive use of deadly force, the legislature appears to have acted in accordance with the common law. It has been stated that "the question of the duty to retreat is a problem only when deadly force is used in self-defense." Wayne R. LaFave, 2 Substantive Criminal Law §10.4(f) (3d ed.) (Oct. 2023 update). "It seems everywhere agreed that one who can safely retreat need not do so before using nondeadly force." Id.; see State v. Anderson, 631 A.2d 1149, 1154 (Conn. 1993) (stating that it is "generally agreed that one who can safely retreat is not required to do so before using non-deadly force in self-defense"). Thus, in light of the "long-recognized and near-universal common-law concept that there is no duty to retreat when using non-deadly force in defense of self or others," to create a duty to retreat before using non-deadly force in defense of self or others "would require express legislative language." Pages v. Seliman-Tapia, 134 So. 3d 536, 539-40 n.6 (Fla. Dist. Ct. App. 2014); see State v. Etienne, 163 N.H. 57, 74 (2011) (court will not interpret statute to abrogate common law unless statute clearly expresses that intent).

4

[¶ 12] Second, requiring a person to respond to a threat likely to cause serious bodily injury or death by retreating before being justified in responding with the non-deadly force of displaying a firearm would be inconsistent with the 2011 amendment of RSA 627:4, III(a). After 2011, a person is justified in using deadly force when he reasonably believes that another person is about to use unlawful, deadly force against him, and he is not required to retreat if he is anywhere he has a right to be and was not the initial aggressor. Here, we are considering the response to a threat which would be considered by a reasonable person as likely to cause serious bodily injury or death — that is, essentially, a threat of deadly force. Accordingly, we conclude that when determining whether a threat would be "considered by a reasonable person as likely to cause serious bodily injury or death," RSA 631:4, IV, the threatened person's ability to respond by retreating in lieu of displaying a firearm is not a relevant factor. We agree with the defendant that the trial court erred by instructing the jury that one factor it could consider in determining whether the threat existed was whether the defendant could have completely and safely left the area without any risk to himself or others. We note that if the legislature disagrees with our construction of the statute, it is free, within constitutional limits, to amend the statute as it sees fit. See State v. Gunnip, 174 N.H. 778, 785 (2022); see also U.S. CONST. amend. II; N.H. CONST. pt. I, art. 2-a.

[¶ 13] In conclusion, we reverse the defendant's conviction and remand. In light of our ruling on this issue, we need not address the defendant's other arguments.

Reversed and remanded.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.