[821 NE2d 955, 788 NYS2d 651]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK P. JONES, Appellant.

Argued November 17, 2004; decided, December 16, 2004

### POINTS OF COUNSEL

*Edward J. Nowak, Public Defender,* Rochester (*Timothy P. Donaher* of counsel), for appellant. The trial court erred in refusing to instruct the jurors that defendant had no duty to retreat from his own home before using deadly physical force against his cohabitant when the prosecutor implied that he had such a duty. (*People v Tomlins,* 213 NY 240; *People v McManus,* 67 NY2d 541; *Wilson v Arkansas,* 514 US 927; *Miller v United States,* 357 US 301; *Allen v United States,* 164 US 492; *Rowe v United States,* 164 US 546; *Brown v United States,* 256 US 335; *Shorter v People,* 2 NY 193; *People v Sullivan,* 7 NY 396.)

*Michael C. Green, District Attorney,* Rochester (*Arthur G. Weinstein* of counsel), for respondent. Where the jury heard nothing about the duty to retreat before using deadly force in self-defense, there was no reason for the court to explain the "dwelling" exception to that duty. (*People v Watts,* 57 NY2d 299; *People v Reynoso,* 73 NY2d 816; *People v Emmick,* 136 AD2d 892; *People v Tomlins,* 213 NY 240; *Brown v United States,* 256 US 335.)

### OPINION OF THE COURT

ROSENBLATT, J.

In essence, our self-defense statute provides that a person attacked with deadly force may respond in kind only if unable to retreat with complete safety. Penal Law § 35.15 (2) (a) contains an exception relevant to this appeal: someone who would otherwise have to retreat need not do so if attacked at home (*see* Penal Law § 35.15 [2] [a] [i]). The question before us is

whether the exception applies when the assailant and the defender share the same dwelling. We hold that it does.

Defendant choked his live-in girlfriend to death after she picked up a knife during a heated argument with him. In its charge on justifiable homicide, the trial court refused to instruct the jury that because defendant was in his own home he had no duty to retreat before using deadly force. This refusal was error.

## I.

Using a public telephone in his neighborhood, defendant called 911 and revealed that three weeks earlier he had killed his girlfriend in their Rochester apartment. He added that her body was still at the residence and that "I'm admitting to it; there's no denying it. There ain't nobody else's fault. Just me." The police picked defendant up and went to the apartment. On the way, defendant admitted that he and his girlfriend had a fight in which he "choked the shit out of her" and wanted the police to see for themselves. Inside the apartment, they saw the decayed body and, under the television set, discovered a knife.

After warning defendant of his *Miranda* rights, the police investigators took a signed statement from him. Defendant said that he and the deceased had been in an argument over money she owed a drug dealer. She called the police, at whose behest defendant left the premises for a short time to cool off. When defendant returned, there was a party going on, which irritated him and generated another argument. The girlfriend slapped defendant and picked up a steak knife. When she tried to slap him a second time, he grabbed her, and she dropped the knife on the floor. "I had her by the throat," defendant said, and "ended up choking the crap out of her." He called 911 to turn himself in after hearing a church sermon, following which he felt that "every man has to pay his dues for the sins and the crap that he does." The medical examiner concluded that the likely cause of death was asphyxiation by manual strangulation.

By and large, defendant's trial testimony tracked his confession. He said that he and his girlfriend had argued and that when she picked up a knife, he grabbed her neck, adding that he then blacked out and did not remember much until after he realized she was on the floor.[1] He lifted her up but did not call

---

1. On cross-examination, defendant stated the deceased was 47 years old, stood 5 feet, 1 inch or 5 feet, 2 inches and weighed about 100 to 105 pounds.

for medical help to see if she could be revived. During cross-examination, the prosecutor several times implied that before strangling the deceased, defendant should have left the apartment and was entirely free to do so. Further, the prosecutor argued in summation that defendant could have walked out the door just as easily as he placed his hand on the deceased's neck.

At the precharge conference, the defense asked for a justification charge. The prosecutor objected, asserting that under no view of the evidence could a jury find defendant justified in using deadly force. The court instructed the jury as to the justifiable use of deadly force but refused defendant's request to tell the jury that under Penal Law § 35.15 (2) (a) (i) defendant owed no duty to retreat when under attack in his own home.

The jury found defendant guilty of manslaughter first degree, in violation of Penal Law § 125.20 (1). The Appellate Division affirmed, ruling that the trial court did not err in refusing to instruct the jury that defendant had no duty to retreat before using deadly force. The Court stated that it was preferable for the trial court to avoid any confusion on the part of the jury by not mentioning the duty to retreat at all, as opposed to mentioning a general duty to retreat and then qualifying that duty by delineating the applicable home exception. We disagree and conclude that the trial court erred in refusing to include the home exception instruction in its justification charge. For reasons that follow, however, we find the error harmless and affirm defendant's conviction.

## II.

Penal Law § 35.15 (2) (a) provides that deadly force may not be used upon another person unless the defender reasonably believes that such other person is using or about to use deadly force. Even then, the defender may not use deadly force "if he knows that he can with complete safety as to himself and others avoid the necessity of doing so by retreating."

The duty to retreat reflects the idea that a killing is justified only as a last resort, an act impermissible as long as other reasonable avenues are open. This has been true throughout New

---

Defendant weighed 165 pounds and stood about 5 feet, 9 inches or 5 feet, 10 inches.

York's statutory and decisional law, which in turn grew out of the common law.[2]

Clause (i) of Penal Law § 35.15 (2) (a) creates an exception to the duty to retreat, under which the person attacked "is under no duty to retreat if he is . . . in his dwelling and not the initial aggressor." The language underlying the home exception stems from the common-law teaching that people's homes are their castles, and that as such one's home is a place of sanctuary; a castle to which, and not from which, a person retreats.[3] Thus, it has long been held that people might defend themselves "against felonious attack without retreating from [their castles], since that would be to give up the protection of a 'castle' which the law allows."[4]

The rationale for standing one's ground when attacked at home is most obvious when defending against an assailant who is an intruder, or at least not a member of the defender's household. Although the home exception seems less obvious when the assailant and the defender are members of the same household (and thus, so to speak, share the same castle), we have unwaveringly applied the exception ever since the issue arose 90 years ago in *People v Tomlins* (213 NY 240 [1914]). There, the defendant shot and killed his son in a residence they shared. Judge Cardozo traced the common-law development of the general duty to retreat and the exception the "castle" doctrine by which a defender, attacked at home, need not become a "fugitive" before responding in kind. Most pertinent to the appeal before us, *Tomlins* (at 243-244) underscored that it makes

---

2. *See e.g. Ex parte Tayloe* (5 Cow 39 [1825]); *People v McLeod* (25 Wend 483, 587, 1 Hill 377, 420 [1841]); *People v Sullivan* (7 NY 396 [1852]); *Shorter v People* (2 NY 193 [1849]).

3. The home exception to the duty to retreat, sometimes referred to as the "castle" doctrine, may have been first articulated in *Semayne's Case* (5 Co Rep 91a, 91b, 77 Eng Rep 194, 195 [KB 1603] ["That the house of every one is to him as his castle and fortress, as well as for his defence against injury and violence, as for his repose. . . ."]). Blackstone noted that the "law of England has so particular and tender a regard for the immunity of a man's house, that it stiles it his castle, and will never suffer it to be violated with impunity" (4 Blackstone, Commentaries on Laws of England, at 223 [1765-1769]).

4. Beale, *Retreat From a Murderous Assault* (16 Harv L Rev 567, 574-575 [1903]); *see also Alberty v United States* (162 US 499, 505 [1896]; *Beard v United States* (158 US 550, 563-564 [1895]).

no difference "whether the attack proceeds from some other occupant or from an intruder."[5]

■ We affirm the castle doctrine in its application to occupants of the same household. This has been our decisional law at least since *Tomlins*, and it has particular importance in cases of domestic violence, most often against women.

Here, having instructed the jury on the use of deadly force, the court should have gone on to discuss the rules governing retreat, including the home exception, particularly because the prosecutor argued to the jury that defendant should have retreated. Under the circumstances of this case, however, this omission does not warrant reversal.

■ Penal Law § 35.15 (2) (a) prohibited defendant from using deadly force unless he reasonably believed that the deceased was using or about to use deadly force. The proof supports no such belief. In his confession, defendant stated that, when the deceased tried to slap him, he grabbed her, she dropped the knife, and he had her by the throat. Moreover, in his trial testimony, defendant said that when the decedent picked up a knife, he grabbed her neck and blacked out. However we interpret this sequence, the predicate for the use of deadly force the reasonable belief that one is under deadly attack is lacking.

In *People v Watts* (57 NY2d 299, 302 [1982]), the sole basis for justification was the defendant's statement to the police that the victim "came after [defendant] in his room with a kitchen knife." This bare contention, we held, provided no possible basis to conclude that the defendant reasonably believed he was in imminent danger of being subjected to deadly force. In the

---

**5.** *See also People v Emmick* (136 AD2d 892 [4th Dept 1988]); *People v Primus* (178 AD2d 565 [2d Dept 1991]); *People v Emick* (103 AD2d 643, 656 [4th Dept 1984]). Most states have agreed, some citing *Tomlins*, in applying the castle doctrine to cohabitants as well as intruders. *See e.g. State v Phillips* (38 Del 24, 187 A 721 [1936]); *Weiand v State* (732 So 2d 1044 [Fla 1999]); *State v Leeper* (199 Iowa 432, 200 NW 732 [1924]); *People v Lenkevich* (394 Mich 117, 229 NW2d 298 [1975]); *State v Glowacki* (630 NW2d 392 [Minn 2001]); *State v Grantham* (224 SC 41, 77 SE2d 291 [1953]). *But see Cooper v United States* (512 A2d 1002, 1006 [DC 1986]); *State v Gartland* (149 NJ 456, 694 A2d 564, 569 [1997]); *State v Warren* (147 NH 567, 568-569, 794 A2d 790, 792 [2002]). *See generally* Etheredge, *The Castle Doctrine: Extension of the Rule to Co-Inhabitants,* 52 Fla L Rev 695 (2000); Wheatcroft, *Duty to Retreat for Cohabitants—In New Jersey a Battered Spouse's Home is Not Her Castle* (30 Rutgers LJ 539 [1999]); Carpenter, *Of the Enemy Within, the Castle Doctrine, and Self-Defense* (86 Marq L Rev 653 [2003]). For a comprehensive catalog of cases, see Annotation, *Homicide: Duty to Retreat Where Assailant and Assailed Share the Same Living Quarters* (67 ALR5th 637).

case before us, there was even less of a basis. In *Watts*, the victim "came after" the defendant with the weapon; here, she merely picked up the knife and while she tried to slap defendant, he choked her to death. Although defendant testified that *after* killing her, he experienced fear, he never claimed, and there is no reason to believe, that he was fearful of being killed or harmed by the actions of the deceased. In this context we note that defendant had a considerable height and weight advantage over the deceased, and also knew that she had been drinking. Her blood alcohol level tested at .22.

In sum, the court gave an incomplete justification charge which, under the circumstances, was neutral if not to defendant's benefit. The court's failure to elaborate and add the home exception does not warrant reversal. The overwhelming evidence disproved the justification defense, and there is no reasonable possibility that the verdict would have been different had the court given the requested instruction (*see People v Crimmins*, 36 NY2d 230, 242 [1975]; *People v Stevens*, 245 AD2d 39 [1st Dept 1997]).

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed.