Aarons, J.
(dissenting). While I agree that the verdict was not against the weight of the evidence, in my view, defendant received the ineffective assistance of counsel when defense *1167 counsel’s cumulative errors essentially nullified defendant’s justification defense and removed the focus of the case away from defendant’s alleged justified acts and towards a nonexistent duty to retreat. Accordingly, I respectfully dissent.
Defendant’s defense centered on the theory that he was justified in stabbing the victim after their altercation. James Atwell, who resided in defendant’s home along with the victim, testified that he did not see the victim act aggressively towards defendant. However, defendant, who did not testify at trial, provided a contrasting version of the events at issue through his oral statements given to the police investigators after the stabbing incident. Prior to the stabbing, defendant and the victim were involved in a verbal, profanity-laced altercation in defendant’s home. This altercation escalated with the victim physically assaulting defendant and throwing him to the ground and against the fireplace and wood stove. A chair fell down but defendant explained that he subsequently picked it up because he did not like the room to be messy. Defendant went outside so that he could call 911, which he had done in the past based upon the victim’s prior behavior. Defendant’s calls, however, did not go through because the victim turned off the power from the inside of the house and prevented defendant’s cell phone signal booster from operating.
When defendant subsequently returned inside his home, he initially was not fearful of the victim. The victim, however, continued to scream at defendant. They resumed their altercation and the victim “came at [defendant].” Defendant thus grabbed a knife from the kitchen counter out of the need to protect himself and backed away into the laundry room. Defendant told the victim to stay away from him, but the victim refused. Even though the victim was unarmed, the victim “challenged him,” “egg[ed] him on after he had the knife in his hand” and told him to “go for it.” The victim then lunged at defendant and impaled himself on the knife that defendant was holding. As a consequence of their altercation, defendant complained of bruising and had an abrasion above his eye and a hangnail on his finger.
James Terzian, a pathologist who performed the autopsy of the victim, testified that the victim had some bruises on the knuckles of his right hand and a small laceration on his left middle finger. Terzian also testified that the toxicology report revealed marihuana in the victim’s body and that the victim had a blood alcohol level of .27.
Defendant offered the expert testimony of Thomas Lazzaro, a forensic psychologist, who testified that defendant suffered *1168 from an anxiety disorder that made him “hyper-vigilant and very aware of any circumstances that might threaten him.” Lazzaro also opined, within a reasonable degree of psychological certainty, that it was reasonable for defendant to believe that he had to defend himself against serious physical injury. More critically, defendant’s expert forensic pathologist testified that it was possible for the victim to have impaled himself on the knife held by defendant and that the victim’s wound was “consistent with a defensive wound.”
In my view and contrary to the majority’s position, the evidence disproving the justification defense was not overwhelming inasmuch as the jury could have reasonably believed that defendant was justified in using deadly force to protect himself given that defendant had called the police in the past regarding the victim’s behavior, defendant and the victim had a physical and verbal altercation resulting in an abrasion above defendant’s eye and an injury to his finger, defendant felt the need to grab a knife to protect himself from the victim who continued to “come at him” and defendant’s experts concluded that it was reasonable for defendant to believe that he had to defend himself from the victim and that the victim could have impaled himself on the knife. Indeed, these facts are in marked contrast to the events described by Atwell, the victim’s 86-year-old cousin who was sitting in a wheelchair and admittedly could not see into the laundry room where the stabbing allegedly took place.
Because the justification defense was crucial to defendant, evidence of whether defendant had the option to retreat from his home should have never been brought to the jury’s attention inasmuch as defendant had no such duty to retreat (see People v Jones, 3 NY3d 491, 496 [2004]; People v Ward, 162 AD2d 566, 567 [1990]). Defense counsel, however, allowed such evidence to be admitted at trial and argued by the People during opening and closing statements without any restraints or limiting instructions. As such, defense counsel’s inaction let the justification defense slip away before the first witness even testified. Based upon such inaction, in my view, defendant was deprived of meaningful representation inasmuch as “[defense counsel’s] assistance was [not] consistent with [that] of a reasonably competent attorney” (People v Thiel, 134 AD3d 1237, 1240 [2015] [internal quotation marks and citation omitted], lv denied 27 NY3d 1156 [2016]), and the record reveals “the absence of strategic or other legitimate explanations” for his deficient conduct (People v Caban, 5 NY3d 143, 152 [2005] [internal quotation marks and citation omitted]).
*1169 First, as defense counsel knew that defendant spoke with the police investigators after the stabbing incident at issue and that he was questioned as to whether he could have retreated from his home, no legitimate strategy can be gleaned by defense counsel’s failure to request that portions of defendant’s oral statements given to the police investigators be redacted to exclude any statements related to whether defendant should have retreated from his home, or, at the very least, that a limiting instruction be given with respect to such statements. During defendant’s interview, the police investigators repeatedly inquired about defendant’s decision to reenter the house, when he could have walked down the road to his father’s or neighbor’s house. The investigator questioned defendant at length about various scenarios involving defendant’s ability to retreat from, or remain outside, his home. The investigator further commented to defendant that it did not make sense to him that defendant returned inside the house given that he could have retreated.
Notwithstanding the prejudicial nature of these statements and comments, defense counsel made no pretrial attempt to exclude them and likewise failed to seek a limiting instruction with respect to them (see People v Dove, 287 AD2d 806, 807 [2001]). The voluntariness of defendant’s statements to the police investigators does not prevent defense counsel from seeking to redact prejudicial information therein (see e.g. People v Letendre, 247 AD2d 796, 796-797 [1998]) and, therefore, in my view, no reasonable attorney could have thought that such a preclusion motion would not have been worth making (see People v Ramsey, 134 AD3d 1170, 1172 [2015]; People v Langlois, 265 AD2d 683, 684 [1999]). Here, as soon as the jury heard the interview wherein the investigators preyed on defendant’s choice not to retreat, the idea that defendant had the option to leave his home was implanted in the juror’s minds. With the jury’s attention tethered to the notion that defendant should have retreated — when defendant had no obligation to do so because he was in his home when the stabbing occurred— the jury was free to disregard any of the evidence demonstrating that defendant was justified in stabbing the victim. When the central component of a defense involves portraying that a defendant was justified in stabbing a victim, detracting away from such defense was “not a misguided though reasonably plausible strategy decision but clear ineffectiveness of counsel” (People v Bell, 48 NY2d 933, 935 [1979]; People v Brugman, 111 AD2d 562, 563 [1985]).
Defense counsel also allowed the People to solicit testimony, *1170 and argue on summation, that defendant should have retreated from his own home, all once again without any objection or a request for a limiting instruction (see People v Ramsaran, 141 AD3d 865, 871 [2016], lv granted 28 NY3d 1075 [2016]). Even though the jury had already heard about defendant’s chance to retreat based upon defendant’s interview with the police investigators, the People specifically asked, during the direct examination of one of the investigators, “Did [defendant] say anything about whether he had the opportunity to retreat?” The investigator responded that “[defendant] said he could have retreated. He said he could have gone to a residence down the road, he could have gone back outside. And he also said that he wished he had done that.” Another investigator was similarly questioned on this topic of defendant’s ability to retreat and testified that defendant mentioned that he had the opportunity to leave his home before the stabbing incident. Indeed, the People expounded on this point in their summation by arguing that one of defendant’s options was to leave and go down the road to his father’s house as opposed to reentering his home. Such evidence of defendant’s ability to retreat may have been admissible for other purposes, as the majority notes, but it was also significantly prejudicial to defendant. As such, it was even more imperative that defense counsel take the necessary steps to limit such prejudice. No steps, however, were taken by defense counsel (see People v Smith, 140 AD3d 1403, 1404 [2016]; People v Ramsey, 134 AD3d at 1172; People v Fleegle, 295 AD2d 760, 762-763 [2002]; People v Langlois, 265 AD2d at 685).
Furthermore, defense counsel never objected to County Court’s erroneous qualification of the home exception to the duty to retreat charge. During the charge conference, County Court stated that it could omit any reference as to defendant’s duty to retreat or have the jury instructed about the duty to retreat with the home exception. With the issue of the duty to retreat having permeated the trial, defense counsel was essentially compelled to request the latter. As such, after charging the jury on defendant’s duty to retreat and the home exception thereto, County Court qualified the home exception by instructing the jury that “[t]he determination of whether a particular location is part of a [defendant's dwelling depends on the extent to which the [defendant and persons actually sharing living quarters with the [defendant exercise[ ] exclusive possession and control over the area in question.” The majority acknowledges that County Court should not have included this language, but views it as harmless error. I disagree. Defendant was entitled to have the jury charged with *1171 the correct standard of law (see People v Medina, 18 NY3d 98, 104 [2011]). By instructing the jury that it had to determine the extent over which defendant exercised control and possession of the area in question, County Court gave the misleading impression that defendant may have had the duty to retreat from his own home. County Court’s instruction invited the jury to make a factual determination as to whether the area where the stabbing occurred was part of defendant’s home when, as a matter of law, it was not required to do so (cf. People v Santarelli, 99 AD2d 594, 594 [1984]). In other words, County Court’s instruction permitted the jury to impose upon defendant a duty to retreat when, as discussed, none existed at all (see People v Emick, 103 AD2d 643, 661 [1984]; cf. People v Johns, 122 AD2d 74, 76 [1986]).
While the majority concludes that all of the trial testimony demonstrated that the stabbing took place in defendant’s home, in my view, this does not render the error harmless. It does not change the fact that County Court gave a charge that was wholly inapplicable to the facts and unnecessary as a matter of law. Moreover, County Court compounded the error by rein-structing the jury, upon its request, with the same inapplicable qualification of the home exception to the duty to retreat charge (see People v McTiernan, 119 AD3d 465, 468 [2014]; People v Primus, 178 AD2d 565, 566 [1991]). Because the justification defense was critical to defendant (see People v Phillips, 32 AD3d 1343, 1344 [2006]), and inasmuch as the evidence disproving the justification defense was sharply contested at trial and not overwhelming (see People v Powell, 101 AD3d 1369, 1373 [2012], lv denied 21 NY3d 1019 [2013]; compare People v Jones, 3 NY3d at 497), County Court’s jury charge, in my view, was not harmless error (see generally People v Walker, 26 NY3d 170, 174-175 [2015]) and required an objection.
Finally, defense counsel raised no objection when Terzian testified that the victim’s death was a homicide. An objection to this testimony would not have been without merit inasmuch as “[s]uch characterization improperly invaded the province of the jury” (People v Odell, 26 AD3d 527, 529 [2006], lv denied 7 NY3d 760 [2006]; see People v Heath, 49 AD3d 970, 973 [2008], lv denied 10 NY3d 959 [2008]). Nor do I view the error in Terzian expressing this opinion as harmless, because, as discussed, the evidence disproving the justification defense was not overwhelming.
In sum, defense counsel’s errors — failing to seek exclusion or request a limiting instruction regarding the offending portions of defendant’s statements to the police investigators concern *1172 ing defendant’s ability to retreat, failing to object or request a limiting instruction to the People’s questions and summation pertaining to defendant’s duty to retreat, failing to object to County Court’s improper jury charge regarding the duty to retreat and the home exception thereto and failing to object to Terzian’s testimony that the victim’s death was a homicide— would not rise to the level of ineffective assistance of counsel when viewed in isolation. Cumulatively, however, they deprived defendant of meaningful representation in this case where the evidence disproving the justification defense was not overwhelming (see People v Fisher, 18 NY3d 964, 967 [2012]; People v Bush, 107 AD3d 1302, 1303 [2013]; People v Lindo, 167 AD2d 558, 559 [1990]). For these reasons, I would reverse the judgment of conviction and remit the matter for a new trial.
Ordered that the judgment is affirmed.