People v Delisme (2022 NY Slip Op 05130)

People v Delisme

2022 NY Slip Op 05130

Decided on September 06, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 06, 2022

Before: Manzanet-Daniels, J.P., Webber, Gesmer, Scarpulla, Shulman, JJ. 

Ind No. 3847/18 Appeal No. 16186 Case No. 2019-04131 

[*1]The People of the State of New York, Respondent,
v
Bertrand Delisme, Defendant-Appellant.

Caprice R. Jenerson, Office of the Appellate Defender, New York (Rosemary Herbert of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Sylvia Wertheimer of counsel), for respondent.

Judgment, Supreme Court, New York County (Erika M. Edwards, J.), rendered August 1, 2019, convicting defendant, after a jury trial, of assault in the second degree, and sentencing him, as a second felony offender, to a term of four years, reversed, on the law, and the matter remanded for a new trial.
Defendant and the complainant lived in a housing complex where they each had a separate room that gave them access to a shared bathroom to which no one else had access. The court should have granted the defense's request for a jury instruction that defendant, who asserted a defense of justification, had no duty to retreat from the bathroom he shared with the complainant as a matter of law (Penal Law § 35.15 [2] [a] [i]; see People v Primus, 178 AD2d 565, 566 [2d Dept 1991] [it was reversible error t0 charge the jury on duty to retreat where the assault occurred outside a shared bathroom that was part of the defendant's dwelling]; People v McCurdy, 86 AD2d 493, 497-498 [2d Dept 1982]).
Under these undisputed facts, this bathroom, unlike a hallway bathroom, was accessible only from the respective rooms of defendant and the complainant. As a matter of law, the shared bathroom was a part of defendant's dwelling, notwithstanding that he shared it with the complainant, as opposed to a common area in the building. Therefore, under Penal Law § 35.15 (2) (a) (i), defendant had no duty to retreat before using deadly physical force to defend himself (compare People v Bradford, 191 AD3d 484 [1st Dept 2021], lv denied 37 NY3d 954 [2021]).
Given these facts, the court's inaccurate instruction that whether the incident took place in defendant's dwelling depended on the extent to which defendant exercised exclusive possession and control over the area in question could have led the jury to erroneously conclude that the bathroom was not part of defendant's dwelling because he shared it with the complainant and that therefore defendant had a duty to retreat. Indeed, the court apparently overlooked that the term "dwelling" in Penal Law § 35.15 (2) (a) (i) means "a person's residence, and [that] any definition of the term must therefore account for a myriad of living arrangements . . . [so that a] determination of whether a particular location is part of a defendant's dwelling depends on the extent to which defendant (and persons actually sharing living quarters with defendant) exercises exclusive possession and control over the area in question" (People v Hernandez, 98 NY2d 175, 182-183 [2002] [emphasis added]).
On this record, there is no evidence that in addition to defendant and the complainant, strangers had routine access to or use of their shared bathroom (id. at 183). Accordingly, there was simply no factual determination for the jury to make as to whether or not the location of the assault was in a dwelling within the meaning of Penal Law § 35.15 (2) (a) (i) in considering defendant's justification defense.
Moreover, we do not find that the error in the [*2]court's justification instruction (quoted by the dissent in its entirety) was harmless. The issue of justification was of critical importance in this case, as evidenced by the jury's requests for the definition of intent and for defendant's testimony about how the complainant attacked him. In People v Jones (3 NY3d 491, 496 [2004]), cited by the dissent, the defendant testified that the victim did no more than try to slap him, an act that clearly did not involve deadly physical force. Contrarily, during cross-examination defendant explicitly testified, "I heard the door open quick and he attempt to swing at me with an object," and reiterated that "he tried to hit me with an object, I blocked it and I just grabbed something quickly near the bathroom and I hit him." That testimony, if accepted, was evidence that defendant reasonably believed he was facing an imminent attack that could cause him death or serious physical injury (see Penal Law § 10.00 [11]), and justifiably acted in self-defense.
We fully accord the jurors their proper deference as finders of fact and assessors of the credibility of witnesses (People v Bleakley, 69 NY2d 490, 495 [1987]), and never assume they were required to accept defendant's version of the altercation over that of the complainant. Nonetheless, "[i]n considering a challenge to a jury instruction, the crucial question is whether the charge, in its entirety, conveys an appropriate legal standard and does not engender any possible confusion" for the jury (People v Hill, 52 AD3d 380, 382 [1st Dept 2008] [internal quotation marks omitted] [reversing conviction because of potentially confusing jury instructions that, inter alia, failed to distinguish between ordinary and deadly force on justification defense and duty to retreat]).
Our dissenting colleagues fairly marshal the testimonial evidence they perceive as overwhelming. Nonetheless, on this record, and in hindsight, we find that their conclusion rests on speculation that the jury found the complainant more credible than defendant. It is plausible that the jury may have rejected the justification defense by finding that defendant's use of deadly physical force was unwarranted as the initial aggressor. It is equally plausible that the verdict was predicated upon a finding that defendant, despite not being an initial aggressor who reasonably believed the complainant was about to use deadly physical force against him (even without actually being struck), still had a duty to retreat, based upon the court's erroneous instruction. It must be emphasized that this erroneous instruction did affirmatively direct the jury to consider the duty to retreat in making their factual determination as to whether or not defendant was justified in using deadly physical force. Since the verdict sheet solely asked the jury to decide if defendant committed the crime of assault in the second degree, we cannot ascertain the basis for the verdict. Based on the foregoing, we cannot find that [*3]this error was harmless.
Defendant's pro se speedy trial arguments are unpreserved, as well as unreviewable for lack of a sufficient record, and we decline to review them in the interest of justice. Because we are ordering a new trial, we find it unnecessary to reach any other issues.
All concur except Webber and Scarpulla, JJ. who dissent in a memorandum by Webber, J. as follows:

WEBBER, J. (dissenting)
 

Penal Law § 35.15 (2)(a) prohibits a person from using deadly physical force against another person unless he reasonably believes the other person was using or about to use deadly physical force. In my opinion, evenassuming the trial court erred in not instructing the jury that, as a matter of law, defendant had no duty to retreat, the error was harmless, because the record does not support the conclusion that defendant's use of deadly physical force was justified (see People v Jones, 3 NY3d 491, 496 [2004]). To be clear, the court never instructed the jury that defendant had a duty to retreat. Rather, it declined to instruct the jury that defendant did not, as a matter of law, have a duty to retreat, and left that determination to the jury.
In Jones, the Court found that while the trial court erred in not instructing the jury that the defendant had no duty to retreat in his own dwelling before using deadly physical force, the error was harmless. There, the defendant asserted that the victim tried to slap him, at which time he grabbed her and strangled her to death. The Court found that "the predicate for the use of deadly force [-] the reasonable belief that one is under deadly attack [-] [was] lacking"(id.). It concluded that there was no reason to believe that the defendant was fearful of being killed or harmed by the actions of the deceased.
Here, "[t]he overwhelming evidence disproved defendant's justification defense, and there is no reasonable possibility that the verdict would have been different had the court given the requested instruction" (id. at 497, citing People v Crimmins, 36 NY2d 230, 242 [1975]; People v Stevens, 245 AD2d 39 [1st Dept 1997]).
The People presented the testimony of an employee at the single residence occupancy shelter where the incident took place that hours before the incident, defendant, referring to the complainant, stated that "today would be [his] neighbor's last day." Following the incident, defendant stated to an employee that he had "held [his neighbor] hostage" and that he had told him "if he came into the bathroom or attempted to leave the residence that he would hurt him." The complainant testified that after waiting for hours to use the joint bathroom, upon hearing the shower turned off, he thought the person in the bathroom was finished, found the door unlocked, and entered, whereupon, according to the complainant, defendant struck him on the head with a metal pipe.
Defendant testified that from the time the complainant moved in, there had been continual cursing back and forth through [*4]the adjoining wall. According to defendant, these exchanges were all initiated by the complainant. Defendant testified that on the morning of the incident, the complainant again began cursing at him through the adjoining wall. According to defendant, there was cursing back and forth between them. At some point defendant entered the bathroom. Despite the heated exchange, defendant did not lock the door. He testified that it was his practice not to do so, because if he forgot to unlock the door, the other resident who used that bathroom would be unable to enter.
Defendant testified that while he was standing at the sink in the bathroom, the complainant suddenly opened the door to the bathroom and attempted to hit him. Defendant stated that he assumed the complainant was "mad" about him cursing him.According to defendant, he blocked the attempt and immediately grabbed an object that happened to be on the floor in his room, outside the bathroom, and struck the complainant with it. Defendant testified that as he grabbed the object and swung at the complainant, the complainant made no further attempt to strike him. Defendant testified that he struck the complainant with what he believed to be a heavy wooden object that may have had sharp edges. While he stated that it was not a metal pipe, he stated that it may have "had some metal on it." He was unaware exactly how the object had come to be in his room. Defendant stated that he did not see the object the complainant attempted to hit him with. He did not explain exactly how the complainant attempted to hit him, other than that the complainant came at him from defendant's side.
In its analysis, the majority completely ignores the fact that the jury is the ultimate finder of facts and assessor of credibility. It seems to assume that the jury was required to accept defendant's version of what occurred - a version that the jury reasonably rejected as incredible. Both the complainant and defendant described the bathroom as small in size. According to both, the sink was closer to the door to the complainant's room (defendant testified that the door to the bathroom actually struck him as the complainant entered), with the toilet in the middle and the shower/tub closer to the door to defendant's room. Defendant's version of what occurred would require the jury to conclude that after the complainant attempted to hit him, defendant was able to reach into his room- around the toilet and the shower/tub -and grab an unknown object that happened to be on the floor and strike the complainant and that all the while, the complainant simply stood in the bathroom and made no further attempt to strike defendant.
The jury reasonably concluded that it was the complainant's version of what occurred that was more credible. Such a determination obviated the need for a consideration of the duty to retreat, since theduty to retreat only becomes relevant when the defendant is found not to have been the initial [*5]aggressor. The " 'initial aggressor' " is the person " 'who first uses or is about to use offensively deadly physical force' " (People v Mickens, 219 AD2d 543, 544 [1st Dept 1995], lv denied 87 NY2d 904 [1995] ; see People v Irizarry, 200 AD3d 428 [1st Dept 2021], lv denied 37 NY3d 1161 [2022]). Here, the jury was more than reasonable in finding that defendant was not only the initial aggressor but also the only aggressor. Contrary to the majority's argument, this is not mere speculation but is based upon the facts as presented by the testimony. Defendant's testimony that he was able to ward off the complainant's sudden attack by reaching around a toilet as well as a tub/shower and grabbing a wooden object that happened to be on the floor in his bedroom near the bathroom door was far less credible than the complainant's testimony. Moreover defendant's own statements to the employees of the shelter both before and after the assault could reasonably be seen as evincing his intent to assault the complainant and supporting the conclusion that defendant was the initial aggressor of the assault. The jury's request for further instruction on the definition of intent and for defendant's testimony as to how the complainant attacked him reinforces the conclusion thatthe jurors questioned defendant's version of what occurred. Clearly, in evaluating the facts presented as well as the credibility of the witnesses, the jury properly rejected defendant's defense of justification (see People v Almeida, 128 AD3d 1451, 1453 [4th Dept 2015], lv denied 26 NY3d 1006 [2015]; People v Fernandez, 304 AD2d 504, 504—505 [1st Dept 2003], lv denied 100 NY2d 620 [2003]). Indeed, it is the majority that engages in speculation when it argues that it is plausible that the jury's verdict was based upon a finding that although defendant was not the initial aggressor who reasonably believed the complainant was about to use deadly physical force against him, he had a duty to retreat, based upon the court's instruction. This conclusion is implausible, given the facts presented.
The majority's argument that the court's instruction somehow confused the jury is not borne out by the record. The court's failure to instruct the jury that, as a matter of law, defendant did not have a duty to retreat, could not have engendered any confusion (see People v Hill, 52 AD3d 380, 382 [1st Dept 2008]). The court gave the standard CJI Justification Charge (see People v King, 85 AD3d 412, 413 [1st Dept 2011], lv denied 18 NY3d 925 [2012] ["we repeat the admonition that the better practice for the trial courts is, when feasible, to utilize the charges contained in the Criminal Jury Instructions"]). The court instructed the jury as follows:
"Now in terms of the justification defense here, the defendant, Bertrand Delisme, has raised the defense of justification which is also known as self-defense. The defendant, however, is not required to prove that he was justified. To the contrary, the People [*6]are required to prove beyond a reasonable doubt that the defendant was not justified. It is up to you, as the finders of fact, to decide whether the defendant used deadly physical force or non-deadly physical force which we called ordinary physical force against the complainant, Garnell Davis, and whether the defendant's actions were justified under the law.
"Now portions of the law justifying the use of deadly physical force are different than . . . justifying the use of ordinary physical force but most of it is the same.
"For example, the use of deadly physical force requires that a person retreat. To retreat under certain circumstances before using such force, if he or she is able to do so with complete safety. And such duty to retreat is not required in the use of ordinary physical force. Therefore, I will instruct you under the law for both justification defenses and you can decide which type of force the defendant used to determine which instruction applies and then you can determine whether the People proved beyond a reasonable doubt that the defendant is not justified in using such force.
"Now first I'm going to discuss the use of deadly physical force in defense of a person. I will now explain the law's definition of the defense of justification as it pertains to the use of deadly physical force.
"Under our law, a person may use deadly physical force upon another individual when, and to the extent that, he reasonably believes it to be necessary to defend himself from what he reasonably believes to be the use or imminent use of deadly physical force by such individual.
"Now some of the terms used in this definition have their own special meaning in our law and I will now give you the meaning of the following terms: 'Deadly physical force' and 'reasonably believes.'
"Now deadly physical force means physical force which under the circumstances in which it is used is readily capable of causing death or other serious physical injury.
"Serious physical injury means impairment of a person's physical condition which creates a substantial risk of death or which causes death or serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ.
"The determination of whether a person reasonably believes . . . deadly physical force to be necessary to defend himself from what he reasonably believes to be the use or imminent use of deadly physical force by another individual requires the application of a two-part test. That test applies to this case in the following way:
"First, the defendant must have actually believed that Garnell Davis was using or was about to use deadly physical force against him, and that the defendant's own use of deadly physical force was necessary to defend himself from it. And, second, a reasonable person in the defendant's position, knowing what the defendant knew and being in the same circumstances, would have had those same beliefs.
"Thus[*7], under our law of justification, it is not sufficient that the defendant honestly believed in his own mind that he was faced with defending himself against the use or imminent use of deadly physical force. An honest belief, no matter how genuine or sincere, may yet be unreasonable.
"To have been justified in the use of deadly physical force, the defendant must have honestly believed that it was necessary to defend himself from what he honestly believed to be the use or imminent use of such force by Garnell Davis, and a reasonable person in the defendant's position, knowing what the defendant knew and being in the same circumstances, would have believed that too.
"On the question of whether the defendant did reasonably believe that deadly physical force was necessary to defend himself from what he reasonably believed to be the use or imminent use of such force by Garnell Davis, it does not matter that the defendant was or may have been mistaken in his belief; provided that such belief was both honestly held and reasonable.
"Notwithstanding the rules that I've just explained, the defendant would not be justified in using deadly physical force under the following:
"(1) The defendant would not be justified if he was the initial aggressor of deadly physical force.
"Now arguing, using abusive language, calling a person names or the like, unaccompanied by physical threats or acts, does not make a person an initial aggressor and does not justify physical force.
"Initial aggressor means the first person who uses, or threatens the imminent use of deadly physical force.
"The actual striking of the first blow or inflicting of the first wound, does not necessarily determine who was the initial aggressor.
"A person who reasonably believes that another is about to use deadly physical force against him need not wait until he's struck or wounded. He may under such circumstances, be the first to use deadly physical force, so long as he reasonably believed that it was about to be used against him. He is then not considered to be the initial aggressor even though he strikes the first blow or inflicts the first wound.
"Now if a person initially uses or threatens the use of non-deadly physical force against another who, in, response, uses or threatens the imminent use of deadly physical force, then that person who first used or threatened the imminent use of deadly physical force is the initial aggressor.
"Now you may, however, consider, whether Garnell Davis made threats against the defendant prior to the time in question and whether such threat[s] indicated an intent to act upon them as the initial aggressor.
"Now when making that assessment, it does not matter whether the defendant was aware of the thefts.
"I know that was a long one.
"(2) The defendant would not be justified if he knew that he could with complete safety to himself and others avoid the necessity of using deadly physical force by retreating. This is where we discuss the duty to retreat[*8].
"The defendant[,] however, would not be required to retreat if the defendant was in his dwelling and was not the initial aggressor.
"The term 'dwelling' encompasses a house, an apartment, or a part of a structure where the defendant lived and where others are ordinarily excluded. The determination of whether a particular location is part of a defendant's dwelling depends on the extent to which the defendant exercises exclusive possession and control over the area in question.
"(3) The defendant would not be justified if Garnell Davis' conduct was provoked by the defendant himself with intent to cause physical injury to Garnell Davis.
"Now the People are required to prove beyond a reasonable doubt that the defendant was not justified. It is thus an element of Assault in the Second Degree and when I give those three elements it's actually the third one, and that's an element. So it's an element in Assault in the Second Degree that the defendant was not justified. As a result, if you find that the People have failed to prove beyond a reasonable doubt that the defendant was not justified then you must find the defendant not guilty of that count.
"Now the second part of it is the use of physical force in defense of a person which is non-deadly physical force which is also referred to as ordinary physical force. I'm going to explain that to you.
"Under our law, a person may use physical force upon another person when, and to the extent that, he reasonably believes it to be necessary to defend himself from what he reasonably believes to be the use or imminent use of physical force by such individual.
The determination of whether a person reasonably believes physical force to be necessary to defend himself from what he reasonably believes to be the use or imminent use of physical force by another individual requires the application of a two-part test. This test applies in the following way. It's similar in that it has the objective and subjective standard that we just discussed. I'm going to read it to you.
"First, the defendant must have actually believed that Garnell Davis was using or about to use physical force against him and that the defendant's own use of physical force was necessary to defend himself from it.
"And, second, a reasonable person in the defendant's position knowing what the defendant knew, and being in the same circumstance, would have had those same beliefs.
"It does not matter that the defendant was or may have been mistaken in his belief; provided that such belief was both honestly held and reasonable.
"Notwithstanding, the rules I have just explained, the defendant would not be justified in using physical force under the following circumstances:
"(1) The defendant would not be justified if he was the initial aggressor.
"Arguing, using abusive language, calling a person names or the like, unaccompanied by physical threats or acts, does not make a person an initial aggressor and does not justify physical force.
"Initial [*9]aggressor means the person who first attacks or threatens to attack, that is, the first person who uses or threatens the imminent use of offensive physical force.
"The actual striking of the first blow or inflicting of the first wound, does not necessarily determine who was the initial aggressor.
"A person who reasonably believes that another is about to use physical force upon him need not wait until they are struck or wounded. He may, in such circumstances, be the first to use physical force, so long as he reasonably believed . . . it was about to be used against him. He is then now considered to be the initial aggressor, even though he strikes the first blow or inflict[s] the first wound.
"You may however consider whether Garnell Davis made threats against the defendant prior to the time in question and whether such threats indicated an intent to act upon them as the initial aggressor. In making that assessment, it does not matter whether the defendant was aware of the threats.
"(2) The defendant would not be justified if Garnell Davis' conduct was provoked by the defendant himself with intent to cause physical injury to Garnell Davis.
"The People are required to prove beyond a reasonable doubt that the defendant was not justified.
"It is thus an element of Assault in the Second Degree, that the defendant was not justified. As a result [if] you find that the People have failed to prove beyond a reasonable doubt that the defendant was not justified, then you must find the defendant not guilty of that count."
There is no ambiguity or confusion in the court's instructions to the jury. The court specifically instructed the jury that defendant wouldnot be justified in his use of force against the complainant if he were found to be the initial aggressor. As stated above, the facts presented overwhelmingly supported the conclusion that defendant was the initial aggressor. After applying the instructions to the facts as presented, the jury properly rejected defendant's defense of justification.
The court's instructions, while arguably erroneous in the absence of an instruction that defendant did not, as a matter of law, have a duty to retreat, did not deprive defendant of a fair trial (see People v Every, 146 AD3d 1157, 1164-1165 [3d Dept 2017], affd 29 NY3d 1103 [2017]). In my opinion, the evidence presented, including defendant's own testimony was wholly insufficient to establish a defense of justification (see Penal Law § 10.00[11]); Jones, 3 NY3d at 496-497). As such, I would affirm the conviction.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 6, 2022